**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT E. ARGUE, III,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **DAVID DAVIS ENTERPRISES, INC.,** | : | |
| *trading as* **DAVIS ACURA, et al.,** | : | |
| **Defendants** | : | **NO. 02-9521** |

**M E M O R A N D U M   A N D   O R D E R**

PRATTER, J.                                                    SEPTEMBER 26, 2007

Robert E. Argue, III initiated this action against his former employer, David Davis

Enterprises, t/a Davis Acura ("Davis Acura"), David Davis, the owner, president and Chief

Executive Officer of Davis Acura, and Joseph Diano, Davis Acura's general manager and sales

manager.  Mr. Argue's claims invoke the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann.

§ 955, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat.

Ann. § 260.1 et seq.  Specifically, Mr. Argue claims that Davis Acura and the named defendants

discriminated against him on the basis of his age (54) when they terminated his employment in

January 2001.  Defendants have moved for summary judgment with respect to all of Mr. Argue's

claims.

**FACTUAL BACKGROUND**

The facts discussed below are undisputed unless otherwise indicated.  Where there is a

dispute, the Court considers those facts in the light most favorable to Mr. Argue.  Abramson v.

William Paterson Coll. of N.J., 260 F.3d 265, 267 (3d Cir. 2001).[1]

In September of 1998, Mr. Davis interviewed Mr. Argue for the position of Service Advisor at Davis Acura. (Def. Statement of Facts ¶ 1.) Mr. Davis offered, and Mr. Argue accepted, the position of Service Advisor. (Def. Statement of Facts ¶ 1.) At this interview, Mr. Davis and Mr. Argue did not discuss the issue of Mr. Argue's age.

Prior to Mr. Argue's initial interview, Davis Acura had offered the position of Service Manager to Mark Hartman, who was then 34 years old. (Def. Statement of Facts ¶ 3.) As a Service Advisor, Mr. Argue's role would have been to support Mr. Hartman as Service Manager. (Def. Statement of Facts ¶ 4.) However, Mr. Hartman subsequently declined Davis Acura's job offer. Before Mr. Argue began his employment with Davis Acura as a Service Advisor, Mr. Davis invited him back for a second meeting to interview for the position of Service Manager.

During the second interview, Mr. Davis asked Mr. Argue his age (Def. Statement of Facts ¶ 2; Pl. Mem. Opp'n 3), and Mr. Argue informed him that he was then 52 years old. (Pl. Mem.

---

[1] The Court's Policies and Procedures require a party moving for summary judgment to provide a numbered, paragraph-by-paragraph description of the facts, supported by citations to the record, to support the motion. Similarly, the Court requires that the party opposing the summary judgment motion provide in responsive numbered paragraph form whether there is agreement or disagreement as to the facts as stated by the moving party. If the opposing party contends that a fact is in dispute, there must be a citation to the record evidence that supports the party's view of that particular fact. The Court's Policies and Procedures provide that failure to dispute a moving party's factual contentions in this manner will lead to the Court's consideration of the moving party's factual assertions as undisputed. Full compliance with these requirements assists the Court in giving the parties a more timely resolution of the motion and, of course, provides a more reliable discernment of the parties' respective view of the facts.

In this case, Defendants complied with the Court's procedures and provided a numbered, paragraph-by-paragraph recitation of the "undisputed" facts, including supporting citations to the record. Plaintiff, however, rather than responding in kind, simply provided his own view of the "factual background" of this action. Plaintiff did, however, cite to the record to support his view of the facts.

Opp'n 3).[2]  At that time, Mr. Davis was 56 years old.[3]  (Def. Statement of Facts ¶ 1; Pl. Mem. Opp'n 3.)  Mr. Argue claims that Mr. Davis seemed surprised to learn that Mr. Argue was 52, and that Mr. Davis said that Mr. Argue did not look his age, which was "good."  (Argue Dep. 54:22-55:1-2.)  Following the interview, Mr. Davis offered the position of Service Manager to Mr. Argue.  (Def. Statement of Facts ¶ 5.)  Mr. Argue accepted Davis Acura's offer of employment for this position as well.  Mr. Argue understood at the time he accepted the offer that his job at Davis Acura would encompass the combined responsibilities of both the Service Advisor and Service Manager positions.

Mr. Davis testified that Mr. Argue's main duty was to be a Service Advisor because that was where his experience lay.  (Def. Statement of Facts ¶ 6.)  Prior to accepting the position of Service Manager at Davis Acura, Mr. Argue had never held a managerial position.  (Def. Statement of Facts ¶ 5.)  Mr. Davis testified that Mr. Argue's salary was based on the fact that Mr. Argue was serving as a combination Service Advisor/Service Manager.  (Def. Statement of Facts ¶ 6.)

As Service Manager, Mr. Argue replaced Glen Davis, David Davis's son, who was approximately 30 years old at the time.  (Def. Statement of Facts ¶ 9.)  From the date he was hired in September 1998 until November 2000, Mr. Argue's immediate supervisor was Mr. David Davis.  (Def. Statement of Facts ¶ 10.)  From November 2000 until his discharge in January 2001, Mr. Argue's immediate supervisor was Mr. Diano, Davis Acura's General Manager.  (Def. Statement of Facts ¶ 11.)

---

[2] Mr. Argue was born April 4, 1946.

[3] Mr. Davis was born October 2, 1941.

Defendants claim that Mr. Argue began developing attitude and performance issues in approximately June 1999.  (Def. Statement of Facts ¶ 18.)  This description is supported by the testimony of several employees of Davis Acura who were Mr. Argue's former co-workers and who testified to various negative experiences with him.[4]

As to Mr. Argue's performance, Defendants claim that Mr. Argue lacked administrative skills (Def. Statement of Facts ¶ 19), and that he required assistance to complete administrative tasks for which he was responsible, such as closing repair orders (Def. Statement of Facts ¶¶ 20-21.).  Other employees at Davis Acura had to assume some of Mr. Argue's various job responsibilities.  (Def. Statement of Facts ¶¶ 22-23.)  Mr. Diano, both before and after he became General Manager in November 2000, found that Mr. Argue did not do the work he was told to do, that other office staff members had to complete Mr. Argue's tasks, and Mr. Argue had "personality problems" with other employees.  (Def. Statement of Facts ¶¶ 24-25, 31, 35-37.)

In mid- to late-2000, Randi Levin, the Controller for Davis Acura, frequently complained to Mr. Davis and Mr. Diano about Mr. Argue's job performance, telling them that "something needed to be done."  (Def. Statement of Facts ¶ 61.)  In October 2000, Mr. Diano and Ms. Levin informed Mr. Davis that they wanted to terminate Mr. Argue's employment.  (Def. Statement of Facts ¶ 63.)  Mr. Diano testified that it was his decision to terminate Mr. Argue's employment and that he did not need Mr. Davis's prior approval to fire employees.  (Def. Statement of Facts ¶ 69.)  Mr. Davis testified that he was not responsible for Mr. Argue's termination, and that he would have preferred instead that Mr. Diano give Mr. Argue a lateral position or demote him. (Def. Statement of Facts ¶¶ 65-68.)  Ultimately, Mr. Davis left the decision whether to terminate

---

[4] See infra note 8.

Mr. Argue to Mr. Diano and Ms. Levin.  (Def. Statement of Facts ¶ 66.)

Mr. Diano testified that he determined to fire Mr. Argue because of the animosity that had developed between Mr. Argue, Ms. Levin and Ms. Mattis, who at the time was Davis Acura's warranty clerk and accounting clerk (Mattis Aff. ¶ 3),[5] because Ms. Levin and Ms. Mattis felt they were having to do Mr. Argue's job for him.  (Def. Statement of Facts ¶ 71.)  With Ms. Levin present, Mr. Diano terminated Mr. Argue's employment, citing poor performance and poor attitude as the reasons for doing so.  (Def. Statement of Facts ¶ 72.)

Davis Acura hired James Mann as a Service Manager to replace Mr. Argue.  When Mr. Argue was terminated on January 2, 2001, Mr. Mann was 34 years old.  (Def. Statement of Facts ¶ 60.)  It was actually Mr. Argue who had introduced Mr. Mann to Davis Acura.  (Soon after Davis Acura hired Mr. Argue, Mr. Argue hired Mr. Mann, whom he knew from prior employment, as a foreman in the service department.  (Def. Statement of Facts ¶ 14.))  Mr. Mann worked for Davis Acura in that capacity from January through June of 1999.   (Def. Statement of Facts ¶ 15.)

Davis Acura began to recruit Mr. Mann for the Service Manager position around September 2000, while Mr. Argue was still employed.  Ms. Levin and Mr. Diano recommended that Mr. Davis hire Mr. Mann to replace Mr. Argue.  (Def. Statement of Facts ¶¶ 57-58.)  Defendants claim Davis Acura hired Mr. Mann because he was very personable, got along well with all employees and interacted very well with customers.  (Def. Statement of Facts ¶ 59.)

Defendants claim that age was not a factor in the decision to terminate Mr. Argue.  (Def.

---

[5] From the date Ms. Mattis was hired by Davis Acura in 1993 until 2003, she served as a warranty clerk and/or accounting clerk.  In 2003, Ms. Mattis was promoted to the position of Office Manager for Davis Acura.  (Mattis Aff. ¶¶ 1-3.)

Statement of Facts ¶ 74.)  While Mr. Argue was employed by Davis Acura, he never complained or believed that he was discriminated against because of his age.  (Def. Statement of Facts ¶ 76.) Rather, Mr. Argue came to believe that Davis Acura discriminated against him because of his age during the weeks after he was terminated because, presumably as he mulled over the comments made to him during the meeting when he was fired, he did not believe that he had a performance or attitude problem.  (Def. Statement of Facts ¶ 77.)  Mr. Argue's claims were made thereafter.[6]

### JURISDICTION

The Court has federal-question jurisdiction over Mr. Argue's ADEA claims pursuant to 28 U.S.C. § 1331, and pendant jurisdiction over Mr. Argues PHRA and WPCL claims pursuant to 28 U.S.C. § 1367.

### STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that

---

[6] The procedural history of this case is recounted in the Court's orders of November 4, 2004 (Docket No. 29), and September 6, 2006 (Docket No. 45).

6

supposedly demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden on such issues can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

**DISCUSSION**

**I.     Age Discrimination Claims against Davis Acura under the ADEA and PHRA[7]**

   **A.     Legal Standard Under the ADEA and PHRA and the McDonnell Douglas**

---

   [7] In his Complaint, Mr. Argue asserts all three of his claims indiscriminately against all three of the defendants in this case without specific distinction.  However, the ADEA does not provide for liability against an individual in discrimination cases.  See Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006) (stating that the ADEA does not provide for individual liability) (citing Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 610 n.2 (7th Cir. 2001); Medina v. Ramsey Steel Co., Inc., 238 F.3d 674 (5th Cir. 2001); Smith v. Lomax, 45 F.3d 402, 403 n. 4 (11th Cir.1995) (all holding that there is no individual liability under the ADEA)); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) (holding that Congress did not intend to hold individual employees liable under Title VII, which is parallel to the ADEA in many ways); see also Washington v. Volunteers of Am., No. 05-4186, 2007 U.S. Dist. LEXIS 56578, at *8-9 (E.D. Pa. Aug. 3, 2007) (citing Hill and dismissing as a matter of law plaintiff's ADEA claims against an individual defendant); Girard v. Aetna U.S. Healthcare, No. 04-5955, 2007 U.S. Dist. LEXIS 15738, at *17 (E.D. Pa. Mar. 5, 2007) (same).  Therefore, Mr. Argue's claims against Mr. Davis and Mr. Diano under the ADEA are dismissed as a matter of law.

### Burden-Shifting Framework

Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA also prohibits an employer from discharging an employee because of that employee's age. 43 Pa. Cons. Stat. Ann. § 955.

Each age discrimination case must be judged on its own facts. Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1214 (3d Cir. 1988). The burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), is the appropriate analysis for summary judgment motions in cases alleging age discrimination where, as here, there is no direct evidence of discrimination. Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994). Courts analyze a claim of age discrimination under the ADEA and the PHRA using the same framework. See Tomasso v. Boeing Co., 445 F.3d 702, 705 (3d Cir. 2006) (applying the McDonnell Douglas burden-shifting analysis to a plaintiffs ADEA and PHRA claims). Therefore, Mr. Argue's age discrimination claims against Davis Acura under the ADEA and the PHRA are evaluated under the same standards, and the same analysis is applied to both claims.

To show an inference of age discrimination the plaintiff must show that he "lost out because of his age." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (holding that the relevant issue is whether the evidence could support a reasonable factfinder's conclusion that a discriminatory animus served as the basis for the employer's decision); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 355 (3d Cir. 1999). Proof of a prima facie case raises an inference of discrimination, and that inference has the force and effect of a rebuttable

presumption.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).  Under the

McDonnell Douglas test, in order to establish a prima facie case of age discrimination, a plaintiff

must demonstrate by a preponderance of the evidence that he or she: (1) is at least 40 years of

age; (2) was qualified for the position; (c) suffered an adverse employment action; and (d)

younger employees were treated more favorably, creating an inference of age discrimination.

Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 136 (3d Cir. 1997).  These elements are not to

be construed too strictly; rather, their resolution will depend on the facts of the particular case.

Jones v. School Dist., 198 F.3d 403, 411 (3d Cir. 1999).  For the purposes of this motion, Davis

Acura concedes that Mr. Argue has established a prima facie of age discrimination, and the Court

will presume that Mr. Argue has met this burden.

If a plaintiff establishes a prima facie case, the employer must then articulate a legitimate,

non-discriminatory reason for the adverse employment action.  Burdine, 450 U.S. at 254.  The

employer need not persuade the Court that the employer was actually motivated by the proffered

reasons, but need only raise a factual issue as to whether it discriminated against the plaintiff.  Id.

at 253-56.

To survive summary judgment when the employer has articulated a legitimate

nondiscriminatory reason for its action, a plaintiff must demonstrate that the defendants'

articulated reason was not the actual reason for the employment decision, but rather a pretext for

discrimination.  Girard v. Aetna U.S. Healthcare, No. 04-5955, 2007 U.S. Dist. LEXIS 15738, at

*14 (E.D. Pa. Mar. 5, 2007).  "[T]he plaintiff must point to some evidence, direct or

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action." Simpson v. Kay

Jewelers, 142 F.3d 639, 644 (3d Cir. 1998) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.

1994)).  To discredit defendants' articulated reasons, plaintiff must point to "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of

credence" and therefore infer that the proffered nondiscriminatory reason "did not actually

motivate" the employer's action.  Fuentes, 32 F.3d at 764-65 (internal quotations omitted).

Because Mr. Argue has established a prima facie of age discrimination, pursuant to the

burden-shifting framework described above, the burden shifts to Davis Acura to provide a

"legitimate,  non-discriminatory reason" for Mr. Argue's discharge.

## B.    Davis Acura's "Legitimate, Non-discriminatory Reason"

Davis Acura claims that Mr. Argue's employment was terminated due to his poor

attitude towards his co-workers and poor on-the-job performance.  Davis Acura claims that from

June 1999 until January 2001, Mr. Argue consistently failed to adequately perform the tasks to

which he was assigned.  It claims that Mr. Argue's poor performance resulted in other employees

assuming his responsibilities in addition to his own, which created a hostility towards Mr. Argue.

The Court would expect that even the Plaintiff would acknowledge that Davis Acura has

provided substantial evidence in support of its argument that Mr. Argue was terminated because

of his poor attitude and performance.[8]  Thus, the Court finds that Davis Acura has met its burden

---

[8] In particular, Mr. Davis testified that he became dissatisfied with Mr. Argue's job-related performance after Mr. Mann left Davis Acura in 1999, when the dealerships "numbers started going backwards."  (Davis Dep. 78-79.)  Mr. Davis indicated that other employees informed him that Mr. Argue "had an attitude with the girls in the office and other managers and it was compounded by the fact that they had to do all his administrative work."  (Davis Dep. 64.)

of providing a "legitimate,  non-discriminatory reason" for Mr. Argue's discharge.  Accordingly,

Mr. Argue must demonstrate that Davis Acura's articulated reason was not the actual reason for

his discharge, but rather was a pretext for discrimination.

---

He explained that Mike Baltrush had to help Mr. Argue close out repair orders and to prepare for the end-of-the-month financial statement.  (Davis Dep. 64.)  Mr. Davis explained that Mr. Baltrush was supposed to teach Mr. Argue how to do various tasks, such as closing out repair orders, but that Mr. Argue refused to learn how to complete these tasks.  (Davis Dep. 64-68.)  Thus, Mr. Baltrush had to continue to perform Mr. Argue's responsibilities in addition to his own; Mr. Davis stated that this situation "never got better."  (Davis Dep. 64.)

Randi Levin testified that she and Mr. Baltrush regularly helped close out repair orders at the end of the month because Mr. Argue was unable to complete this task.  (R. Levin Dep. 22-26, 32, 34, 54, 56-57 ("[Mr. Argue] didn't get done his job and I filled in frequently to make sure that the paperwork was done. . . .  Administratively I picked up a lot of his slack."))  Ms. Levin offered to teach Mr. Argue how to perform various tasks, but, she claims, Mr. Argue was not receptive to the training she or other outside vendors provided and continued to perform his assigned tasks poorly.  (R. Levin Dep. 57.)

Ms. Levin also testified that she acted as the intermediary between Mr. Argue (in his role as the Service Manager) and the cashiers.  She testified that Mr. Argue "wasn't nice to the cashiers and a couple of times he made them cry."  (R. Levin Dep. 28.)  She further testified that Mr. Argue would "holler" at Debbie Mattis, who was a warranty clerk at the time, and would make her cry on a frequent basis, i.e., at least once a week.  (R. Levin Dep. 30.)

Ms. Mattis submitted an affidavit stating that the position of Service Manager required extensive knowledge of factory warranty procedures, but, based on her experience working with Mr. Argue, he possessed only limited knowledge of these procedures.  (Mattis Aff. ¶¶ 7-8.)  She stated that American Honda required each dealership's Service Manager to take a yearly computerized test on warranty payment and procedures, but that Mr. Argue never took this test and, instead, directed Ms. Mattis to take the test on his behalf twice.  (Mattis Aff. ¶¶ 9-10.)  Ms. Mattis stated that Mr. Argue frequently was unable to answer her questions regarding the warranty process.  (Mattis Aff. ¶ 11.)  She also stated that Mr. Argue was rude to her on several occasions, rude to the cashiers and other members of the office staff, and that he frequently spoke to her in a condescending manner and tried to intimidate her.  (Mattis Aff. ¶¶ 13-14.)

In addition, Phyllis Levin, who was a cashier during the time Davis Acura employed Mr. Argue, submitted an affidavit stating that throughout Mr. Argue's employment with Davis Acura, he frequently directed her and other cashiers to perform his job tasks for him.  (P. Levin Aff. ¶¶ 6-8.)  She stated that she often observed Mr. Argue acting rude or condescending towards the cashiers.  (P. Levin Aff. ¶¶ 13-14.)  Ms. Levin currently holds the position of Accounting Clerk at Davis Acura.  (P. Levin Aff. ¶ 2.)

### C.      Pretext

As noted above, to survive summary judgment, Mr. Argue must either

(i) . . . present sufficient evidence to meaningfully throw into question, i.e., to cast substantial doubt upon, [the employer's] proffered reasons for [terminating his employment] (e.g., by painting them as weak, implausible, contradictory, or incoherent), or (ii) to come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision (e.g., by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons).

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Thus far in the litigation Plaintiff's approach to satisfying his burden to show that Davis Acura's articulated reason for his discharge is actually a pretext for discrimination could be seen as a bit mystifying.  Despite Davis Acura's clear assertion that Mr. Argue's job performance was sub-par – and was a reason for his termination – Mr. Argue states that "Defendants have acknowledged that the only reason plaintiff was fired was because of his alleged poor attitude." (Pl. Mem. Opp'n 15 (emphasis added).)[9]   Mr. Argue then proceeds to deny having had a bad

---

[9] Mr. Argue makes a modest effort to rebut Davis Acura's claim that it fired him, in part, because of his poor job performance.  He submitted an affidavit in which he states that he disagrees with the testimony offered by Mr. Davis, Ms. Mattis, Randi Levin and Phyllis Levin that he performed his tasks poorly, or that other employees frequently had to "pick up the slack" for him.  (See generally Argue Aff. ¶¶ 21-39.)  In his brief, Mr. Argue merely and summarily "asserts he performed well" (Pl. Mem. Opp'n 16), and states that "the record shows that plaintiff performed well" (Pl. Mem. Opp'n 15).  In fact, however, the only "record" that he performed well is his own testimony to that effect.  Mr. Argue testified that he believes that his job performance at Davis Acura was good.  However, other than the one time when Mr. Davis allegedly complimented him on his performance, Mr. Argue does not recall whether Mr. Davis or any other employee complimented his performance.  (Argue Dep. 138:9-20.)

In the "factual background" section of his brief, Mr. Argue devotes a single page to addressing his job performance.  Relying entirely on his own testimony and affidavit, Mr. Argue

attitude or engaging in interpersonal conflict with his co-workers at Davis Acura.  Furthermore,

he claims that prior to his termination, no one at Davis Acura informed him or complained to

him that his performance or attitude was poor.  He states that no one evaluated his performance,

and that no corrective action was ever suggested to improve his allegedly poor performance.

(Argue Aff. ¶ 15.)[10]  Thus, Mr. Argue submits that his denials and other evidence (or, perhaps,

more accurately, the absence of any evidence that would be expected to accompany the litigation

assertions of the Defendants) that "permit[] the inference that any alleged attitude problem or

inter-personal conflicts are much over-hyped and were not that significant if at all in the context

of Davis' decision to fire plaintiff and hire Mann" are sufficient to withstand summary judgment.

(Pl. Mem. Opp'n 15.)  In response, Defendants claim several reasons supported by evidence in

the record that Mr. Argue was terminated because of his poor attitude and performance, and

argue that Mr. Argue, in short, "has not succeeded in throwing enough doubt on any of those

explanations so that a rational factfinder could reject it."  Fuentes v. Perskie, 32 F.3d 759, 766

(3d Cir. 1994).

     Bolstering Mr. Argue's meager attempts to challenge Defendants' explanations, the

record evidence indicates that Defendants' proffered reasons for Mr. Argue's termination have

---

claims that he "energized" the service department and brought it up to top-level performance,
which resulted in Davis Acura receiving "several" high monthly ratings, and twice receiving
Acura's "Precision Team Award."  (Pl. Mem. Opp'n 4.)  Prior to the date Mr. Argue joined
Davis Acura, Davis Acura had never won this award.  Mr. Argue attributes this success to the
performance of the service department for which, as Service Manager, he was responsible.  Mr.
Argue claims that Mr. Davis once complimented him on his job performance in either late 1999
or early 2000.  (Pl. Mem. Opp'n 4.)

   [10] Mr. Argue testified that Mr. Davis instructed him to give any employee under his
direction who was performing poorly at least two corrective interviews – "a chance to turn
around" – before terminating the employee.  (Argue Dep. 155:1-7.).

some weaknesses.  For example, Defendants claim that Mr. Argue lacked administrative and supervisory skills, yet Mr. Davis (and the rest of the managerial staff) knew that prior to when Mr. Argue assumed the role of Service Manager at Davis Acura, he had no prior managerial experience.  Mr. Argue was an experienced Service Advisor, but had never worked as a Service Manager.  Mr. Davis expected that Mr. Argue's "main duty" would be to serve as a Service Advisor "because that is what he was good at.  Everything else was new to him or would be new."  (Davis Dep. 40-41.)  Thus, despite the fact that Defendants knew that Mr. Argue had never before performed managerial duties and many of the administrative tasks involved in management, the record indicates that Mr. Argue's alleged performance deficiencies were never brought to his attention.  No one at Davis Acura informed Mr. Argue of such deficiencies or gave him a chance to improve, never gave him a formal "corrective interview," and never informed him that he might be terminated if his performance did not improve.  Certainly, under most circumstances an employer is entitled to terminate an at-will employee who does not perform up to par, without providing any prior notice or offering the employee a "second chance."  However, (a) Davis Acura previously informed certain employees that management perceived problems with their performance, (b) such employees were afforded a chance to improve, and (c) Mr. Davis was aware that Mr. Argue had no managerial experience yet his employment was terminated, because, according to Defendants, he suffered from fairly substantial performance flaws related to his managerial and administrative duties.  In the Court's view, these are factors that are relevant to considering the issue of pretext.  One would expect under such circumstances that an employer would bring such deficiencies to an employee's attention quickly in an effort to remedy any performance problems efficiently.  That Davis Acura continued Mr. Argue's

14

employment for over two years without informing him that his performance was poor until his exit interview  gives rise to the inference that "poor performance" is pretext for discrimination in this case.

In addition, at this stage Mr. Argue may also avoid summary judgment by presenting "sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision." Fuentes, 32 F.3d at 765.  Mr. Argue essentially claims that Davis Acura was permeated with a "pro-youth" attitude as held and espoused by Mr. Davis.  He claims that Mr. Davis was obsessed with age, and frequently extolled the virtues of youth, and youthful energy as opposed to "old ways" of thinking.  Specifically, Mr. Argue claims that Mr. Davis frequently took age into consideration when making personnel decisions, and that during the two-plus years he was employed by Davis Acura, Mr. Davis discriminated against others on the basis of their age.  In addition, Mr. Argue claims that Mr. Davis made several age-related remarks, which, viewed as a whole, establish a consistent pattern of conduct that demonstrated a clear preference for hiring younger employees, and a negative bias towards older employees.

### 1.    Mr. Argue's Second Interview at Davis Acura

It is undisputed that during Mr. Argue's second interview for a position at Davis Acura, Mr. Davis asked him his age.  When Mr. Argue responded that he was 52 years old, he states that Mr. Davis was "somewhat taken aback" and commented that Mr. Argue did not look or act his age, and that this was a good thing.  (Argue Dep. 54:17-55:6.)  During the same interview, Mr. Argue claims that Mr. Davis stated that he wanted Mr. Argue to "become part of the solution and

not part of problem, that managers get old and set in their ways."  (Argue Dep. 57:10-58:19.)[11]

While Mr. Davis admits to asking Mr. Argue how old he was at the second interview (Davis

Dep. 43-44), he claims "[a]ge has nothing to do with it really," and that he inquired about Mr.

Argue's age because he wanted to know whether Mr. Argue had the "giddy [sic] up and go"

required for the job.  (Davis Dep. 43.)

> 2.    *Other Age-Related Comments Made by Mr. Davis*

At his deposition, Mr. Argue testified that during the course of his employment at Davis

Acura, Mr. Davis at times made "general" comments indicating that managers need to have more

or higher energy (Argue Dep. 194:13-17), that Davis Acura needed to get rid of "old ways of

thinking and/or acting" (Argue Dep. 194:18-23), that some mangers were "old and set in their

ways" (Argue Dep. 152:17), and that Mr. Argue "wasn't over the hill yet" (Argue Dep. 146:14-

19).  On another occasion, after a situation arose that was brought to Mr. Davis's attention– Mr.

Argue was not able to recall the specifics of the situation – Mr. Davis incorrectly thought that

Mr. Argue was at fault; he approached Mr. Argue and asked him if he was "getting too old to do

this job."  (Argue Dep. 145:4-10.)  Mr. Argue claims that other similar age-related comments

were made at Davis Acura and that Mr. Davis would find them funny and laugh at them.  (Argue

Dep. 147:12-20.)

---

[11]  Mr. Argue went on to explain that he believes that Mr. Davis's "part of the solution"
comment was meant to explain his desire to correct certain perceived deficiencies in the service
department that were "holding back" Davis Acura and keeping it from winning certain awards.
(Argue Dep. 58:1-11.)  Mr. Argue perceived Mr. Davis to mean that Mr. Argue should not "join
in with the other individuals in his dealership that were holding him back."  (Argue Dep. 58:1-
11.)  At this interview, Mr. Davis did not indicate which individuals were "holding him back."
At his deposition, Mr. Argue did not know to which individuals Mr. Davis referred who were
supposedly "holding him back" or were "old and set in their ways."   (Argue Dep. 58:1-11.)

In addition, Mr. Argue points to several occasions when Mr. Davis praised the virtues of youth.  He claims that Mr. Davis commented on Mr. Mann's "youthful good looks, his youthful energy."  (Argue Dep. 150:17-24.)  Mr. Argue claims that Mr. Davis was not terribly interested in Mr. Mann's technical skills insomuch as he was "interested in the way the guy looked and he liked it he was a young guy.  He was attractive.  That he could communicate well."  (Argue Dep. 150:21-151:1.)

Mr. Davis commented that Mr. Mann would be a good "replacement" for Mr. Argue "when the time came."  (Argue Dep. 151:3-7.)  He allegedly made this comment twice.  The first time was when Mr. Argue first hired Mr. Mann, and the second was when Mr. Mann left Davis Acura in 1999.  When Mr. Mann left, Mr. Davis was "visibly upset," stating that he "had plans for this young man [Mr. Mann] to replace you [Mr. Argue] when the time comes."  (Argue Dep. 151:20-23.)

      3.    *Mr. Davis's Treatment of Other Older Employees*

      a.    <u>Mike Baltrush</u>

Plaintiff claims that in 1998 Mr. Davis demoted Mike Baltrush, an employee in his late 50s, from the position of parts manager to the position of assistant to the parts and service managers.  (Argue Aff. ¶ 16.)  He claims that Mr. Baltrush was replaced by John Maciejewski, who was in his early 30s.  (Argue Aff. ¶ 16.)  Plaintiff claims that around the time Mr. Baltrush was demoted, Mr. Davis told Plaintiff that Mr. Baltrush was "too old" to get the job done, that he had been there too long, had been there forever, and that he was too old to manage anymore.  (Argue Dep. 140:3-10.)  Mr. Argue claims that Mr. Davis's comments arose during a discussion about "Mr. [Baltrush]'s job performance and his inability to get the job done because he was too

old to do it." (Argue Dep. 140:17-21.)

        b.      <u>William Drummell</u>

Mr. Argue claims that, also in 1998, Mr. Davis demoted Mr. Drummell from the position

of sales manager.  Mr. Drummell was replaced by Mr. Diano, who was in his mid-30s.  (Argue

Aff. ¶ 17.)  Mr. Davis later terminated Mr. Drummell's employment in June 1999.  (Argue Aff. ¶

17.)[12]

        c.      <u>Bernard Blatnick</u>

Mr. Argue claims that in late 1998, Mr. Davis demoted Bernard Blatnick, who was in his

early 50s, from the position of foreman to technician.  Mr. Blatnick was replaced by Mr. Mann,

who, as noted above, was in his early 30s.  Mr. Argue claims that Mr. Davis expressed the

feeling that Mr. Blatnick lacked the energy to be able to continue to perform the job of foreman.

(Argue Dep. 152:13-17; 188:15-16).

        d.      <u>Mario Sabono</u>

Mr. Argue claims that Mr. Davis directed him to terminate Mario Sabono from his

position as Service Advisor.  Mr. Davis said that Mr. Sabono should be terminated, in part,

because he was too old for the job.  (Argue Dep.  154:8-11.)  According to Mr. Argue, Mr. Davis

said that Mr. Sabono was an "older guy" who had a younger wife and children that "might be too

much for him." (Argue Dep.  154:11-13.)  However, Mr. Argue also acknowledges that Mr.

Sabono was habitually late and had poor performance problems.  (Argue Dep.  154:14-17.)

---

[12] Mr. Argue admits that he has no personal knowledge as to why Mr. Davis demoted Mr.
Drummell.  (Argue Dep. 187:12-20.)

4.      The "Prune Brigadiers"

In addition, Mr. Argue claims that in late 2000 Mr. Davis spoke to him about hiring

senior citizens to serve as greeters, which Mr. Davis referred to as "prune brigadiers."  (Argue

Dep. 144-147.)  Mr. Davis wanted to hire senior citizens, or semi-retired individuals, because

they would work cheaply, and they are not "doing anything anyway," but they can still say

"hello" to Davis Acura's customers and send customers to speak to a Service Advisor.  (Argue

Dep. 144:11-15.)  Some confusion arose as to whether Mr. Argue or Mr. Diano would hire the

"prune brigadiers." After no one had been hired for the position for some time, Mr. Davis

became frustrated and told Mr. Argue that he might consider him for that job.  (Argue Dep.

144:23-24.)

**D.      Analysis**

Defendants argue that Mr. Davis's comments were isolated or stray remarks that, if they

were made – many are unsupported allegations offered by Mr. Argue – were completely

unrelated to the decision-making process that resulted in Mr. Argue's termination.  See Ezold v.

Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by

non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great

weight, particularly if they were made temporally remote from the date of decision.").  In

response, Mr. Argue claims that Mr. Davis's comments "formed a consistent pattern throughout

plaintiff's employment, showing Davis' bias against older workers and in favor of younger

workers, including, specifically, the very person who ultimately replaced plaintiff, Mr. Mann."

(Pl. Mem. Opp'n 21.)

At the summary judgment stage, the Court is not permitted to weigh the evidence

19

presented or to judge the credibility of the parties or witnesses who have offered testimonial

evidence.  See Petruzzi's IGA Supermarkets v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d

Cir. 1993) ("[A]t the summary judgment stage, a court is not to weigh the evidence or make

credibility determinations.  Instead, these tasks are left for the fact-finder.") (internal citations

omitted); Losch v. Borough of Parkesburg, 736 F.2d 903, 909 (3d Cir. 1984) ("While summary

judgment may be based on affidavits, conflicts of credibility should not be resolved on a hearing

on the motion for summary judgment unless the opponent's evidence is 'too incredible to be

believed by reasonable minds.'") (citations omitted).

In this case, Defendants note that the bulk of the evidence Mr. Argue offers in an effort to

defeat summary judgment is his own testimony.  However, the "Supreme Court has made it clear

that self-serving testimony may be utilized by a party at summary judgment." Waldron v. SL

Indus., 56 F.3d 491, 501 (3d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986)).  Moreover, Mr. Argue's testimony is no more self-serving than, for example, Mr.

Davis's testimony on behalf of himself and Davis Acura.  The testimony from all witnesses in

this case was taken under oath and was subject to cross examination.  At this stage in the

proceedings, the Court has no occasion to credit the testimony of one party and reject the

testimony of the another.  Id.  Likewise, even though the Court perceives that the Plaintiff may

face a very tough uphill climb in this case, the Court cannot dismiss or discount the potential

persuasive powers of Plaintiff's interpretations of the evidence that could catch the attention of

the jury.

In light of the evidence presented that all of the derogatory or "ageist" comments can be

attributed to Mr. Davis, Defendants argue that such comments are irrelevant because, they claim,

Mr. Davis was not the person who made the decision to terminate Mr. Argue's employment. Defendants claim that Mr. Diano made the decision to fire Mr. Argue.  In his brief, Mr. Argue claims that the Defendants "acknowledged" that the decision to terminate Mr. Argue had to be approved by Mr. Davis.  Plaintiff offers his own testimony that Mr. Davis made all decisions to fire or demote an employee (Argue Dep. 141:2-6), and that he was "very much involved in everything and anything in the hiring process" (Argue Dep. 164:22-24).  Plaintiff also contends, and Defendants concede, that Mr. Davis was proactive in recruiting and interviewing Mr. Mann, finally convincing him to return to Davis Acura.  Therefore, Mr. Argue contends, any decision to terminate his employment – and replace him with Mr. Mann – must have been made by, or influenced by, Mr. Davis.[13]

---

[13] When Mr. Argue's testimony is viewed in context, his assertion that Mr. Davis played a part in the decision to terminate him may ultimately appear to be speculative.  He points to one statement in his deposition where he states that "Mr. Davis made all decisions as far as making any kind of either a firing or a demotion."  (Argue Dep. 141:2-6.)  However, Mr. Argue made this comment at his deposition when he was asked about Mr. Davis's decision to demote Mr. Baltrush from the position of parts manager to assistant parts manager.  Mr. Argue refers to the following exchange:

| | |
|---|---|
| Counsel: | Were you involved in the decision in [Mr. Baltrush] becoming an assistant parts manager? |
| Mr. Argue: | No.  Mr. Davis made all decisions as far as making any kind of either a firing or a demotion. |

(Argue Dep. 141:3-6.)  Similarly, Mr. Argue's statement that Mr. Davis was "very much involved in everything and anything in the hiring process" (Argue Dep. 164:22-24) was made while he described a meeting between himself and Mr. Davis before he was hired by Davis Acura, at which Mr. Argue signed some paperwork.

| | |
|---|---|
| Counsel: | Did Mr. Davis give you those papers to fill out? |
| Mr. Argue: | Yes. |
| Counsel: | Personally Mr. Davis who is the president of the dealership handed you papers to fill out? |
| Mr. Argue: | Personally.  Mr. Davis was very much involved in everything and anything in the hiring process. |

(Argue Dep. 164:16-24.)

This testimony may indicate only that Mr. Argue, while he was employed by Davis

Mr. Argue's testimony permits the inference that Mr. Davis used age as a criterion in making employment decisions at Davis Acura, and that age may have been a motivating factor in the decision to terminate Mr. Argue.  Mr. Argue testified that during his two-year tenure at Davis Acura, Mr. Davis terminated or demoted at least four employees, other than Mr. Argue, in part, because of their age.  Mr. Argue cites to numerous comments where Mr. Davis referred to "replacing" him "when the time comes," and cited evidence of Mr. Davis's intention to groom Mr. Mann as Mr. Argue's successor.  Moreover, Mr. Davis testified that he knew that Mr. Diano intended to terminate Mr. Argue, that he would have preferred Mr. Diano to demote him instead, and that he could have overruled the decision to terminate Mr. Argue but that he chose not to. This testimony, in addition to the fact that Mr. Davis was directly involved in recruiting Mr. Mann specifically to replace Mr. Argue permits the inference that Mr. Davis influenced the decision to terminate Mr. Argue, and that age was a factor in that decision.

Although Plaintiff's case certainly is by no means air-tight, Plaintiff has produced evidence that would permit a not unreasonable jury to conclude that discriminatory animus was a motivating factor in his termination.  The Court concludes that disputed issues of material facts remain that must be resolved at trial.  Accordingly, Defendants Motion for Summary Judgment will be denied with respect to Mr. Argue's age discrimination claims against Davis Acura under the ADEA and the PHRA.

---

Acura, could not make any hiring or firing decisions without Mr. Davis's approval.  However, Defendants argue that after Mr. Diano became the Davis Acura's general manager, he made certain hiring decisions – including the decision to terminate Mr. Argue – that were not dependant on or subject to Mr. Davis's approval.  Nevertheless, all parties agree that Mr. Davis was the owner and senior officer of the company and that he was typically on-site and directly involved with the business.  Moreover, Mr. Davis unquestionably was the ultimate superior of Mr. Diano and all the others.

II.    **"Aiding and Abetting" Claims against David Davis and Joseph Diano**

Plaintiff also bring a PHRA claim against Mr. Davis and Mr. Diano as individuals for "aiding and abetting."[14]  Defendants argue that summary judgment must be granted in their favor as to these claims because Mr. Argue has not proffered any competent evidence to support a cause of action against either Mr. Davis or Mr. Diano in their individual capacity.  Mr. Argue, does not address this issue in his brief.[15]  Therefore, in the absence of any precedents or other guidance as to the relevant facts and law that conceivably could justify this claim for relief, the Court cannot determine that the claim is fit for resolution by the jury.  Therefore, the Court will enter summary judgment for the Defendants on this claim.

III.   **Claims against Davis Acura under the WPCL**

Mr. Argue's final claim is that he was required to perform two jobs for Davis Acura – service director and service advisor – but that he was compensated only for the position of service director.  He claims that the "Defendants impliedly agreed to pay [him] for the

---

[14] The relevant provision of the PHRA make is unlawful for "any person . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."  43 Pa. Cons. Stat. Ann. § 955(e).  Supervisory employees may be held liable under § 955(e) on the theory that only supervisors can share the discriminatory purpose and intent of the employer that is required for aiding and abetting.  Holocheck v. Luzerne County Head Start, Inc., 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005) (citing Bacone v. Phila. Hous. Auth., No. 01-419, 2001 U.S. Dist. LEXIS 9081, 2001 WL 748177, at *2 (E.D. Pa. June 27, 2001)).  That is, "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory . . . for [her] own direct act of discrimination or for [her] failure to take action to prevent further discrimination by an employee under supervision."  Id. (quoting Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998)).

[15] In the conclusory paragraph of the brief, Mr. Argue merely states that "[s]ince the evidence viewed in favor of plaintiff points to Davis as the decisionmaker but defendants assert it was Diano, the Motion for Summary Judgment on plaintiff's age claims against Davis and Diano individually, particularly under the PHRA, should be denied as well."  (Pl. Mem. Opp'n 22.)

reasonable, fair value of the extra services rendered by him as a service advisor," and seeks the reasonable, fair value of those services, including wages, fringe benefits or wage supplements, liquidated damages, costs and attorneys' fees pursuant to the WPCL.  (Compl. ¶ 80; see generally Compl. ¶¶ 73-89.)  Defendants argue that summary judgment must be granted in their favor on this claim because a cause of action under the WPCL only arises when an employer breaches a contractual obligation to pay earned wages, and that, in this case, there is no written or oral contract that afforded Mr. Argue any additional compensation upon his acceptance of the "combined position" of service advisor/service director.  (Def. Mem. Summ. J. 36.)[16]

As with his claims against Mr. Davis and Mr. Diano individually, Mr.  Argue does not address this claim in his brief.  Unlike the former claims, where Mr. Argue at least referenced the claims in the conclusory paragraph of his brief, Mr. Argue does not devote even a single sentence of his brief to address his WPCL claim.  Because Mr. Argue appears to have abandoned his WPCL claim, and because he has not asserted any facts nor proffered any evidence in support of this claim, summary judgment will be granted for the Defendants with respect to it.

---

[16]  The Third Circuit Court of Appeals has stated that the WPCL "'does not create a right to compensation . . . . rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages.  The contract between the parties governs in determining whether specific wages are earned.'"  Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990)).  In this case, Defendants note that Mr. Argue has not offered any evidence that a written agreement delineating the terms of his employment existed, that he was party to a collective bargaining agreement of any kind, or even that he entered into an implied contract concerning the terms of his employment, and the salary and benefits he would receive.  See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309-310 (3d Cir. 2003) (noting that the issue of whether an implied contract may give rise to a claim under the WPCL has never been addressed by the Pennsylvania state courts).

**CONCLUSION**

Disputed material issues of fact remain with respect to Mr. Argue's age discrimination claims against Davis Acura under the ADEA and the PHRA, rendering summary judgment inappropriate with respect to those claims.  For the reasons provided herein, summary judgment will be entered in favor of the Defendants with respect to all other claims.  An Order consistent with this Memorandum follows.

＿S/Gene E.K. Pratter＿＿＿＿＿＿＿＿

Gene E.K. Pratter
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT E. ARGUE, III,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **DAVID DAVIS ENTERPRISES, INC.,** | : | |
| *trading as* **DAVIS ACURA, et al.** | : | |
| **Defendants** | : | **NO. 02-9521** |

**O R D E R**

**AND NOW**, this 26th day of September, 2007, upon consideration of Defendants'

Motion for Summary Judgment (Doc. No. 63), Plaintiff's response thereto (Doc. Nos. 65-66),

and Defendants' reply (Doc. No. 71), **IT IS ORDERED** that Defendants' Motion (Doc. No. 63)

is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.   Summary judgment will be entered in favor of the Defendants with respect to
     Plaintiff's claims against David Davis and Joseph Diano contained in Count I, and
     with respect to Counts II and III of Plaintiff's Complaint in their entirety;

2.   Defendants' Motion (Doc. No. 63) is **DENIED IN PART** with respect to Count I
     of Plaintiff's Complaint against Davis Acura.

Plaintiff's sole remaining claims are against Davis Acura pursuant to the ADEA and the

PHRA as alleged in Count I of the Complaint.  The Clerk of the Court shall **TERMINATE**

David Davis and Joseph Diano as defendants in this action.

**IT IS FURTHER ORDERED** that a Status Conference in this matter shall be held on

Friday, October 5, 2007 at 10:00 a.m. in Chambers.

BY THE COURT:

 S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge