IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT E. ARGUE, III,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| **DAVID DAVIS ENTERPRISES, INC.,** | : | |
| *trading as* **DAVIS ACURA,** et al., | : | |
| Defendants | : | NO. 02-9521 |

**M E M O R A N D U M**

PRATTER, J.                                                                                                    FEBRUARY 15, 2008

Robert E. Argue, III has brought claims against his former employer, David Davis Enterprises, t/a Davis Acura ("Davis Acura"), pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 955. Mr. Argue claims that Davis Acura discriminated against him on the basis of his age (54) when it terminated his employment in January 2001. Trial of his claims is scheduled to begin with jury selection February 19, 2008.

Davis Acura has filed (1) a motion to bifurcate the trial on the issues of liability and damages; (2) a motion in limine seeking to preclude Mr. Argue from pursuing certain damages; and (3) a motion in limine to preclude the expert testimony and expert report of Mr. Argue's economic expert. For his part, Mr. Argue filed a motion in limine seeking to exclude (1) argument, evidence and testimony concerning his employment following his termination from Davis Acura; and (2) documents, and testimony from one witness not previously disclosed by Davis Acura. The Court will address each of these motions in turn.

**DISCUSSION**

**I.      Davis Acura's Motion to Bifurcate the Trial**

Davis Acura moves to bifurcate the trial for the following reasons: (1) bifurcation arguably could streamline the case and promote judicial economy; (2) testimony and evidence regarding damages and after-acquired evidence could confuse and/or mislead the jury; and (3) the issues and testimony relating to liability are independent of those concerning damages.  Mr. Argue opposes bifurcation.

Federal Rule of Civil Procedure 42(b) provides, in pertinent part, that a court "may order a separate trial of one or more separate issues," "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  The decision to bifurcate is within the discretion of trial judge to be decided on case-by-case basis.  Idzojtic v. Penn. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1971).  The trial court, with a knowledge of the issues and likely tempo of the case, is uniquely situated to determine the process that will serve the interests of the litigants and the society.

The Court concludes that bifurcation of this proposed trial into distinct liability and damages phases is unnecessary, and not so likely to bring about a savings in terms of time, effort or expense as to warrant bifurcation.  The Court also concludes that trying these issues together would not prejudice either party.  The facts presented in this case, whether relevant to liability or damages, are neither more nor less complicated than in most other discrimination cases.  The parties have anticipated that a trial of all relevant issues would last roughly four or five days, which is a relatively modest length of time.  Were the Court to bifurcate the issues, thereby possibly risking having double opening statements, closing arguments and reading of various jury

instructions, the result could actually lengthen that trial time estimate instead of shorten it. Because no compelling reason has been presented as to why bifurcation is necessary or beneficial, Davis Acura's motion will be denied.

## II. Davis Acura's Motion in limine to Preclude Damages

In his Pretrial Memorandum, Mr. Argue claims that he is entitled to back pay, double damages under the ADEA, prejudgment interest, future loss of earning power (i.e., front pay), compensation for negative federal income tax consequences, out-of-pocket expenses, damages for pain, suffering and emotional distress, and punitive damages, as well as attorneys' fees and costs.

Davis Acura filed a motion in limine in which it argues that Mr. Argue should be precluded from seeking: (1) compensatory damages, including damages for pain, suffering and emotional distress, and out-of-pocket expenses,[1] under the ADEA; (2) punitive damages under the ADEA and the PHRA; (3) liquidated damages under the ADEA, and (4) compensation for negative federal income tax consequences. Davis Acura's motion will be granted in part and denied in part as described below.

### A. Damages Under the ADEA

#### 1. *Compensatory Damages*

The ADEA incorporates many of the enforcement and remedial mechanisms of the Fair Labor Standards Act of 1938 ("FLSA"). Like the FLSA, the ADEA provides for "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter." 29 U.S.C. §

---

[1] Mr. Argue claims out-of-pocket expenses, including costs to replace health insurance benefits, certain medical expenses, and extra taxes and lost interest on premature withdrawals of retirement funds.

626(b). That relief may include "without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, as the Supreme Court has noted, "there are two important constraints on courts' remedial power under the ADEA." Comm'r v. Schleier, 515 U.S. 323, 325-26 (1995). First, the ADEA specifically provides that "liquidated damages shall be payable only in cases of willful violations of this chapter," 29 U.S.C. § 626(b), and second, "the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." Schleier, 515 U.S. at 326 & n.2 (1995) (noting the unanimity among circuit courts in holding that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress; citing cases); see also Rogers v. Exxon Research & Engineering Co., 550 F.2d 834, 842 (3d Cir. 1977), cert. denied, 434 U.S. 1022 (1978), overruled for other reasons by Smith v. Jos. Schlitz Brewing Co., 584 F.2d 1231 (1978) (holding that damages for "pain and suffering" or emotional distress cannot properly be awarded in ADEA cases); accord Wehr v. Burroughs Corp., 619 F.2d 276, 284 (3d Cir. 1980) (same); Rodriguez v. Taylor, 569 F.2d 1231, 1241 (3d Cir. 1977) (same); Watkins v. Rite Aid Corp., No. 06-00299, 2006 U.S. Dist. LEXIS 50784, at *6 (M.D. Pa. July 25, 2006) (holding that compensatory damages for emotional distress and post-termination job searches are not recoverable under the ADEA).

A prevailing plaintiff under the ADEA is limited to monetary damages in the form of "wages lost" and "an additional equal amount as liquidated damages." Therefore, Davis Acura's motion to preclude damages for pain, suffering and emotional distress, and out-of-pocket expenses under the ADEA is granted, and Mr. Argue is precluded from seeking the same at trial.

4

      2.    *Punitive Damages*

Both the Supreme Court and the Court of Appeals for the Third Circuit have held that the ADEA's liquidated damages provision "was intended to be punitive in nature." Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 373 (3d Cir. 2004) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126 (1985); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir. 1995)). Although the Third Circuit has never expressly ruled that punitive damages are unavailable under the ADEA,[2] several district courts have so ruled. See, e.g., Burland v. Manorcare Health Servs., No. 98-4802, 1999 U.S. Dist. LEXIS 725, at *11 (E.D. Pa. Jan. 26, 1999) (holding that punitive damages are unavailable under the ADEA); Baur v. M&M/Mars, No. 99-606, 2001 U.S. Dist. LEXIS 24162, 24-25, at *24 (E.D. Pa. Oct. 22, 2001); Tumulo v. Triangle Pac. Corp., 46 F. Supp.2d 410, 416 (E.D. Pa. 1999); Rossi v. Sun Ref. & Mktg. Corp., No. Civ.A.94-3037, 1995 U.S. Dist. LEXIS 225, [*25] (E.D.Pa. Jan. 11, 1995). As stated above, the ADEA permits a plaintiff to recover "liquidated damages," and as the cases cited above indicated, "punitive damages" above and beyond "liquidated damages" are not available under the ADEA. Accordingly, Davis Acura's motion will be granted, and Mr. Argue will be precluded from seeking punitive damages under the ADEA at trial.

      3.    *Liquidated Damages*

The ADEA provides that liquidated damages are available only where the defendant's

---

[2] While the Third Circuit has not ruled whether punitive damages are prohibited under the ADEA, numerous other circuit courts have addressed the issue and have ruled that an award of punitive damages is prohibited. See, e.g., Davis v. First National Bank of Killeen Texas, 976 F.2d 944, 948 (5th Cir. 1993); Bruno v. Western Elec. Co., 829 F.2d 957, 966-67 (10th Cir. 1987); Goldstein v. Manhattan Indus. Inc., 758 F.2d 1435, 1446 (11th Cir. 1985); Johnson v. Al Tech Specialties Steel Corp., 731 F.2d 143, 146-48 (2d Cir. 1984).

violation was "willful." 29 U.S.C. § 626(b). For purposes of that provision, the Supreme Court had defined willfulness as meaning that the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128-29 (1985). In most cases, the question of whether liquidated damages are warranted "will be dependent upon an ad hoc inquiry into the particular circumstances." Kelly v. Matlack, Inc., 903 F.2d 978, 982 (3d Cir. 1990). The Court of Appeals cited the following examples of an employer's willfulness: "(1) where evidence exists that shows that the employer had previously violated the ADEA; (2) where the termination of the employee came at a time when it would deprive him or her of a pension; or (3) when the circumstances of the violation itself were egregious, as in the systematic purging of older people from the employee staff." Kelly v. Matlack, Inc., 903 F.2d 978, 982 (3d Cir. 1990) (citing Dreyer v. Arco Chemical Co., 801 F.2d 651, 658 (3d Cir. 1986)). The Court of Appeals has made clear that pretext alone is an insufficient basis to award liquidated damages. Kelly, 903 F.2d at 983.

Davis Acura argues that Mr. Argue "will not be able to set forth any evidence whatsoever which would indicate that defendant willfully violated the ADEA when it terminated plaintiff." (Def. Mot. 3.) However, at this stage, before trial has commenced, the Court's determination of this issue would be premature. The Court will deny Davis Acura's motion without prejudice as to the issue of liquidated damages, and will permit Davis Acura to revisit this issue, if necessary, at the appropriate juncture.

  **B. Punitive Damages Under the PHRA**

In 1998, the Pennsylvania Supreme Court announced that punitive damages are not available under the PHRA. See Hoy v. Angelone, 554 Pa. 134, 146, 720 A.2d 745, 751 (Pa.

1998) (holding that punitive damages are not available under the PHRA); accord Gagliardo v. Connaught Labs., 311 F.3d 565, 570 n.3 (3d Cir. 2002); Binder v. Pa. Power & Light Co., No. 06-2977, 2007 U.S. Dist. LEXIS 80117, at *8-9 n.4 (E.D. Pa. Aug. 31, 2007). Therefore, Davis Acura's motion will be granted as to this issue as well.

    C.    **Negative Tax Consequences**

Davis Acura argues that Plaintiff should be precluded from seeking to adjust any damages he may be awarded to account for negative tax consequences. In Mr. Argue's response to the motion, Mr. Argue requests that he be permitted to brief the Court on this issue in the form of a post-verdict motion. The Court agrees that this issue should be considered after, and only if, the jury reaches a verdict in Mr. Argue's favor, and if the jury determines that damages should be awarded. Therefore, Davis Acura's motion will be denied without prejudice as to this issue.

**III.    Davis Acura's Motion in Limine to Preclude the Expert Reports and Testimony of Plaintiff's Economic Expert**

Davis Acura first argues that the testimony from Plaintiff's damages experts, Andrew G. Verzilli, Ph.D., and Andrew C. Verzilli, of Verzilli & Verzilli and Consultants, Inc., is not grounded in sufficient facts, data reliable principles or methods, and, accordingly, it should be precluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny. Secondly, Davis Acura argues that Dr. Verzilli's supplemental expert report should be precluded because it is untimely.

    A.    **Davis Acura's Daubert Argument**

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In Daubert, the Supreme Court imposed upon district courts the role of a gatekeeper, in order to "ensure that any and all scientific evidence is not only relevant, but reliable." ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 198 F. Supp. 2d 598, 601-02 (E.D. Pa. 2002) (quoting Daubert, 509 U.S. at 589).  When "faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand and determine a fact in issue."  Id. at 602 (quoting Daubert, 509 U.S. at 592).  This gate-keeping function of the district court extends beyond scientific testimony to "testimony based on . . . 'technical' and 'other specialized' knowledge."  Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

Federal Rule of Evidence 702 provides "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit."  Id. (quoting Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000)).  The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence.  Id. (citing Paldillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999)).

The first requirement, whether the witness is qualified as an expert, has been interpreted

liberally to encompass "a broad range of knowledge, skills, and training." Id. (quoting In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741 (3d Cir. 1994)).

The second prong requires the expert's testimony to be reliable. Id. When the expert testifies to "scientific knowledge," the expert's opinions "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." Id. (quoting In re Paoli, 35 F.3d at 742). In considering whether there are "good grounds" for the expert's opinions, district courts should look at a series of factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Id. (quoting In re Paoli, 35 F.3d at 742 n.8). This list of factors "is non-exclusive and . . . each factor need not be applied in every case." Id. (quoting Elcock, 233 F.3d at 746). The Supreme Court has noted that the district court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony." Id. (quoting Kumho Tire, 526 U.S. at 152).

The final prong requires that the expert testimony "fit" by assisting the trier of fact. Id. (citing Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000)). "Admissibility thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" Id. (quoting In re Paoli, 35 F.3d at

743). The "fit" standard does not require plaintiff to prove "their case twice." Id. (quoting Oddi, 234 F.3d at 145). They need not "demonstrate to the judge by a preponderance of evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that they are reliable." Id. (quoting In re Paoli, 35 F.3d at 744). Thus, the test does not require that the opinion have "the best foundation" or be "demonstrably correct," but only that the "particular opinion is based on valid reasoning and reliable methodology." Id. (quoting Oddi, 234 F.2d at 146).

The Court notes that Davis Acura does not argue that Plaintiff's experts are unqualified, and, in fact, the defense concedes that Dr. Verzilli is qualified to express expert opinions as to economic damages. (Def. Mot. Preclude Expert 1.) Instead, Davis Acura argues that Dr. Verzilli's conclusions are "nothing more than generalized statements based on assumptions with no disclosed data or facts to support these opinions/conclusions." (Def. Mot. Preclude Expert 1.)

However, based on a review of the expert reports submitted, and Davis Acura's arguments as to why Dr. Verzilli's testimony and report should be excluded, the Court finds that Davis Acura does not pose a serious argument that Dr. Verzilli's methodology or principles, from a professional standpoint, are "unreliable." Rather, Davis Acura simply disagrees with Dr. Verzilli's opinions, conclusions, and certain figures Dr. Verzilli employed in calculating damages. These objections to Plaintiff's experts' opinion can and should be addressed through pointed cross-examination. They are not a basis to exclude the testimony altogether.

B.    **Davis Acura's Untimeliness Argument**

Finally, Davis Acura argues that Dr. Verzilli's supplemental expert report, dated January 16, 2008, should be precluded because it was submitted after the Court-imposed deadline for

submission of expert reports of February 16, 2007.  In response, Mr. Argue argues, essentially, that Dr. Verzilli's supplemental expert report is a "bring-down" report, which updates all of the damages estimates in his prior (timely submitted) report to a date closer to trial (instead of a date more than a year prior to trial).  He argues that at trial Dr. Verzilli will testify as to his calculations based on the most recent report, including changes in Mr. Argue's earnings, and that the jury is entitled to determine the extent of his damages using current, instead of stale, estimates.

The Court concludes that Mr. Argue's explanation is sensible under the circumstances of this case and will deny the defense motion, recognizing that the Court's indulgence of Plaintiff's expert in this regard extends <u>only</u> to the expert's updating of the data for his calculations and opinions rather than for any substantively different reasons for them.

**IV.     Mr. Argue's Motion <u>In</u> <u>Limine</u>**

     **A.     Exclusion of any Mention of Plaintiff's Subsequent Employment**

On January 22, 2001, 20 days after Davis Acura terminated Mr. Argue on January 2, 2001, Mr. Argue was hired by Ardmore Acura as an assistant service manger, where he remained until Ardmore Acura terminated his employment in July 2001.  Mr. Argue seeks to preclude all argument, evidence and testimony, including testimony from Davis Acura's damages exert, concerning Mr. Argue's employment at Ardmore Acura.  Davis Acura opposes Mr. Argue's motion, and argues that such evidence is relevant to the issues of both liability and damages.

Certainly, evidence of subsequent employment has been found to be admissible for certain purposes, and inadmissible for other purposes in employment discrimination cases.  However, such determinations should be made by the Court in context, i.e., once the parties seek

to introduce such evidence at trial, and the purpose for offering such evidence is clear. For example, Davis Acura notes that some of the evidence Mr. Argue categorically seeks to exclude may be used by the defense for impeachment purposes, or to impugn Mr. Argue's credibility. At the pretrial stage, any ruling that evidence of or concerning Mr. Argue's subsequent employment must be excluded is premature. Mr. Argue's motion will be denied without prejudice. If, during trial, it appears that the defense seek to introduce such evidence for purposes Mr. Argue believes are improper, Mr. Argue may seeks to renew this motion.[3]

### B.     Exclusion of Witness and Documents Not Previously Disclosed

Mr. Argue seeks to exclude the testimony of Stacy Lube, a representative of Ardmore Acura, whom Davis Acura listed as a witness in its Pretrial Memorandum. Because the issues related to Ms. Lube's testimony are similar to the issues discussed above, the Court similarly will deny the motion without prejudice with respect to this issue.

In addition, Mr. Argue seeks to exclude personnel records of six Davis Acura employees or former employees, which Davis Acura identified as trial exhibits. With respect to this issue, the Court will also deny Mr. Argue's motion without prejudice. At the time Mr. Argue filed this motion, the parties had not yet exchanged trial exhibits, and Mr. Argue had not reviewed these documents. If, after reviewing these personnel files, Mr. Argue continues to object to their admission at trial, he may renew this motion at the time such exhibits are offered into evidence at trial.

An Order consistent with this Memorandum follows.

---

[3] It may well be that both parties' interests can be properly served by reaching stipulations as to agreed upon information from this material about Mr. Argue's tenure at Ardmore Acura.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT E. ARGUE, III,** | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| **DAVIS DAVIS ENTERPRISES, INC.,** | : | |
| *trading as* **DAVIS ACURA, et al.** | : | |
| Defendants | : | NO. 02-9521 |

**O R D E R**

**AND NOW**, this 15th day of February, 2008, upon consideration of Davis Acura's Motion to Bifurcate the Trial on the Issues of Liability and Damages (Docket No. 98), Davis Acura's Motion in limine to Preclude the Expert Reports and Testimony of Plaintiff's Economic Expert (Docket No. 99), Davis Acura's Motion in limine to Preclude Damages (Docket No. 101), Mr. Argue's Motion in limine (Docket No. 89), and the parties' various responses (Docket Nos. 105-107), as set forth in greater detail in the accompanying Memorandum, **IT IS ORDERED** that:

1. Davis Acura's Motion to Bifurcate the Trial on the Issues of Liability and Damages (Docket No. 98) is **DENIED**.

2. Davis Acura's Motion in limine to Preclude the Expert Reports and Testimony of Plaintiff's Economic Expert (Docket No. 99) is **DENIED**.

3. Davis Acura's Motion in limine to Preclude Damages (Docket No. 101) is **GRANTED** in part, and Mr. Argue is hereby precluded from seeking compensatory damages under the ADEA, or punitive damages under the ADEA or the PHRA. Davis Acura's Motion (Docket No. 101) is **DENIED WITHOUT PREJUDICE** in all other respects.

4. Mr. Argue's Motion in limine (Docket No. 89) is **DENIED WITHOUT PREJUDICE**.

           BY THE COURT:

           S/Gene E.K. Pratter
           GENE E.K. PRATTER
           United States District Judge