Exhibit 1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT E. ARGUE, III, | : | |
| Plaintiff | : | CIVIL ACTION NO. 02-9521 |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| DAVID DAVIS ENTERPRISES, INC., t/a | : | |
| DAVIS ACURA, | : | |
| Defendant | | |

## DECLARATION OF CHARLES J. WEISS (AND SUPPORTING SENIOR ASSOCIATES AND LAW CLERK) IN SUPPORT OF PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

1.    I am licensed to practice law in the Commonwealth of Pennsylvania and am a senior partner at the law firm of Timoney Knox, LLP.[1]  With the assistance from time to time of certain senior and junior associates of the firm, a law clerk, and paralegals, I have served as lead counsel for the plaintiff in this action from its inception to the present time.  My representation of plaintiff began on January 11, 2001.

2.    I attended Villanova Law School in the mid-1970s.  While there, I was a member of the Law Review and graduated sixth in my class.  I have since been employed by Timoney Knox, LLP.  I became a full partner in 1980 and have been a senior partner for over twenty (20) years.  I have been and am admitted to the Pennsylvania Bar and am authorized to practice before the Supreme Court of Pennsylvania, as well as all other courts in Pennsylvania, the United States District Court for the Eastern and Middle Districts of Pennsylvania, and the United States Court of Appeals for the Third Circuit.  I have practiced law full-time since admission to the Bar and I have handled cases in many different courts in Pennsylvania, as well as, with the assistance of local counsel, in other jurisdictions.

---

[1] This Declaration is made by Charles J. Weiss except as may otherwise be specifically noted.

3.     I have evaluated, brought, prosecuted, defended, administered, managed, litigated, tried, and assisted in trying a multitude of civil and criminal cases, with the emphasis on civil litigation since 1982. Prior to 1982, I did mostly criminal defense work, gaining significant and valuable trial experience in handling cases involving all types of crime, including serious charges such as murder, manslaughter, rape, other sex offenses, theft, forgery, assault, etc. My experience with civil litigation includes many cases over the years under the various civil rights, discrimination, and whistleblower laws, the Rehabilitation Act of 1973, the ADA, ADEA, Title VII, the Pennsylvania Human Relations Act, 42 Pa. C.S.A. § 1983, ERISA, the Pennsylvania Wage Payment and Collection Law, and the Fair Labor Standards Act. Usually, these cases have involved various common law claims as well, such as wrongful discharge, breach of contract, breach of a covenant not to compete, defamation, fraud, theft of trade secrets or confidential or proprietary information, breach of the duty of loyalty, tortious interference with contract, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, and the like. Over the years to the present time, employment cases of one sort or another and related contract and commercial litigation have become the majority of my case load. I have also represented employers in the defense of employment, commercial litigation, and contract-related claims. In employment-related cases where I have represented employees as plaintiffs, I have done so almost exclusively solely on a contingent fee basis.

4.     Over the years, I have also handled a fair amount of appellate work in state and federal court.

5.     Although I have not kept specific count, I estimate that I have handled as lead counsel over two hundred cases that have gone to trial before judge, jury, or arbitration panel, with at least forty-fifty of these being jury trials.

6.     Based on the foregoing, I believe I have been and currently am a knowledgeable and experienced trial lawyer, having over the course of the last 34 years acted in civil cases on behalf of mostly plaintiffs, some defendants, big and small.

7.     Attached hereto as Exhibits "A" and "B" are detailed and complete summaries of the time spent on this litigation by attorneys and others (except paralegals) in my firm from January 11, 2001 through February 29, 2008.  Exhibits "A" and "B" set forth the date of each service, the time spent on each date, the work performed on each date, and the hours expended by each person working on this case.  The time entries were entered contemporaneously with the services provided and accurately and fairly reflect the work done by my firm through February 29, 2008.  Exhibit "A" differs in style and format from Exhibit "B" since our firm did not have a computerized time entry or billing system prior to 2002.

8.     This case was handled on a contingent fee basis.  Therefore, if plaintiff had not prevailed by way of settlement or verdict, there would be no fees awarded or payable to or recoverable by me or my firm.

9.     Exhibits "A" and "B" also accurately set forth the costs expended and advanced by my firm through February 29, 2008.

10.    I was the only partner who worked on this case.  At various times I was assisted by our senior associates, Ann Thornburg Weiss and/or Carol Crisci.  Ms. Weiss performed direct services on this case in the 2001 and 2003-2004 time periods dealing largely with discovery-related matters and motions and certain legal research.  Ms. Crisci assisted in 2004-2006 mostly with legal research, review of files, compilation of documents, and the preparation of filings with the court having to do with the defendants' motion to disqualify me and the firm, our opposition thereto, our subsequent effort to prevent termination of the case for lack of prosecution, our

subsequent request for reconsideration regarding disqualification, and, ultimately, our re-entry into the case on behalf of plaintiff.

11.     In 2003, I was also briefly assisted by our former junior associate, Joseph Bryan Tuk, who performed certain legal research.

12.     Since 2007 to the present, I have been assisted on this case by Julie Starita, our law clerk, and, since February 29, 2008, also by senior associate, Joshua S. Ganz.  Briefly, Ms. Starita is a trained and experienced lawyer, having been a civil litigator in California from 1981 to 1991. Her good standing but "inactive" status in that state's bar precludes her from holding herself out as an attorney.  Since 1991, she has been content to work as a paralegal and/or law clerk in Oregon and, since 2000, in Pennsylvania.  She has been working with our firm as a law clerk since 2005.  Her work here has consisted almost exclusively of legal research, case and issue analysis, preparation of memos and briefs, preparation of documents for filing, and consultation and assisting with cases, particularly with trial preparation and during trial and post-trial.  Notwithstanding her lack of a current license to practice law, as a law clerk, she brings a substantial wealth of legal knowledge and experience to her position and her assistance has been and continues to be invaluable in this case (and others); at minimum, her work is as valuable as the work of any of our senior associates.

13.     Carol A. Crisci graduated Widener University School of Law in 1995 and has been a licensed attorney in the Commonwealth of Pennsylvania since 1996. After a two year clerkship with two president judges of the Pennsylvania Superior Court, Ms. Crisci was a staff attorney on central legal staff of the Pennsylvania Superior Court for 1 ½ years. Ms. Crisci then entered private practice with the firm of Murphy, Oliver, Caiola and Gowen, P.C., from 1998-2002. Following that, Ms. Crisci became employed as a senior associate with my firm and she has remained employed by my firm in this capacity to the present time.  Ms. Crisci has

substantial research, writing, and appellate experience and has given seminars to other attorneys on appellate practice.

14.     Ann Thornburg Weiss graduated Temple University School of Law in 1980 and has been a licensed attorney in the Commonwealth of Pennsylvania since 1981.  After a two year clerkship with the Pennsylvania Superior Court, 1981-1983, she became employed by my firm in 1994 as an associate attorney; after a stint as partner from 1990-1998, Ms. Weiss has remained with the firm to the present at a level equivalent to that of senior associate

15.     Joshua S. Ganz graduated from the University of Pittsburgh School of Law in 2000 and has been a licensed attorney in the Commonwealth of Pennsylvania and in the State of New Jersey since 2000.  After a five year stint in private practice as an associate attorney with Sweet, Stevens, Tucker and Katz in Bucks County, Pennsylvania, during which time he worked on numerous labor and employment discrimination cases, Mr. Ganz became employed as an associate attorney in private practice with Wiggin and Dana, Conshohocken, Pennsylvania, and remained there for a about two years, after which he became employed at my firm as a senior associate beginning in March, 2007; Mr. Ganz remains employed in this capacity at my firm to date.

16.     My current hourly rate for handling contingent fee civil rights case is Four Hundred Twenty-Five Dollars ($425.00) per hour.  The current hourly rate charged for Mr. Ganz's and Ms. Crisci's time is $250 per hour, and for Ms. Weiss' time is $275 per hour.

17.     The current hourly rate charged for junior associates' time, such as Mr. Tuk, is $200 per hour.

18.     The current hourly rate charged for Ms. Starita's time is $185 per hour.  If she were licensed as an attorney, her time would be billed at no less than the rate of Ms. Weiss, or $275 per hour.

19.     I believe that all of the services performed by my firm, and all the costs incurred, were reasonably necessary to the prosecution of this case.  In fact, Ms. Starita was supposed to attend each day of trial with me but, due to her not feeling well and other factors, she was not able to attend trial after the second day, leaving me to handle the trial on my own with only some assistance (from Ms. Starita when she was in the office) with research and document preparation during the trial.

20.     Exhibits "A" and "B" do not reflect the fact that many of the hours spent by me on this case this year (2008) in preparing for trial and during trial were spent late at night or very early in the morning.

21.     Exhibits "A" and "B" also do not reflect the time spent by paralegals in this case. Although, since last year, our firm has more regularly charged for paralegal time on cases, at least $150 per hour, when this case began, our firm did not have a consistent practice or policy in place to charge for paralegal time.  As a consequence, when this case began, I did not require that paralegals working on the case keep specific time records.  I continued this practice even after our firm began more regularly charging clients for paralegal time since I felt it was or would be inconsistent and perhaps excessive to suddenly introduce a new charging element in the case that did not previously exist.  However, since this case began, and especially in 2003, 2004, 2007, and this year (2008), I can attest that substantial paralegal time has been expended on this case for which my firm does not and will not seek compensation herein for the reasons stated.

22.     Similarly, my firm does not seek compensation herein for staff or paralegal administrative time, such as, for example, the filing and/or service of documents, the handling, organization, and production of documents, and the creation of exhibit files and binders.

23.     I believe, and so state, that the rates set forth in Exhibits "A" and "B" (and also in Exhibits "D" and "E") for myself and others working on this case are reasonable, commensurate with the skill and experience of each attorney or law clerk, and are in line with the prevailing rates charged in Philadelphia and its surrounding counties by equally knowledgeable and experienced trial counsel and law firms taking on equally challenging cases.

24.     In addition, I am generally familiar with the hourly rates charged by other attorneys of like skill and experience in the Philadelphia area. Based on this knowledge, it is my conclusion that attorneys of my skill and experience in the Philadelphia area typically charge $400 per hour or in excess of $400 per hour.

25.     In addition, I have familiarized myself with the Community Legal Services Fee Schedule for litigation attorneys in Philadelphia, attached hereto as Exhibit "C." According to this fee schedule, attorneys (such as myself) with over twenty-five (25) years of litigation experience typically earn between $325 and $410 per hour. As I have 34 years of litigation experience, I believe that $410 per hour would apply to me for services rendered in this case if the Community Legal Services fee schedule were utilized by the Court. However, particularly given the contingency risk factor in this difficult case, the reasonable hourly rate for my time should exceed $410 per hour. Exhibit "C," therefore, sets an hourly rate (for me) which does not account for what a reasonable market hourly rate would be for my services if the risk factor were considered in determining what a reasonable market hourly rate would or should be.

26.     Mr. Robert Argue first contacted me about this case on January 11, 2001.

27.     I then performed background work, conducted several interviews, and did all that was necessary to evaluate the case, decide to take it, and to then insure that Mr. Argue's administrative remedies were exhausted through the EEOC and the Pennsylvania Human Relations Commission. During the administrative phase, there were several dealings with the

Pennsylvania Human Relations Commission, which administered this claim. Among other things, I attended a fact-finding or mediation conference in Philadelphia, evaluated and entertained settlement possibilities, received and reviewed information from the Commission, and dealt with and responded to requests for information and documents from the Commission.

28.     After right-to-sue letters were issued, our firm performed all necessary services to prepare and file the complaint in this Court and, thereafter, to prosecute this case to jury verdict on February 29, 2008.

29.     The following services rendered on behalf of Mr. Argue have been, in many respects, typical of the representation that is usually and customarily required in connection with the prosecution and trial of employment discrimination claims. However, this case required more than usual, and the services rendered were generally more difficult given the aggressive nature of the defense and the number and complexity of the issues in this case:

    (a)    Numerous consultations with and interviews of, and review of documents with, Mr. Argue and various potential witnesses over the years -- to ascertain the details of the claim(s), admissible evidence, and to establish defenses to defendants' affirmative defenses on liability and damages;

    (b)    Receipt, review, and organization of Mr. Argue's documents and materials related to his claim to develop an understanding of its merits and to prosecute the case;

    (c)    Performance of legal research on the numerous issues related to Mr. Argue's claim(s) and/or the defenses raised, analyzing the issues and case law, and preparing memorandums of law internally and for the Court;

    (d)    Preparation of a Complaint of Discrimination for administrative filing;

    (e)    Preparation for and attendance at a fact-finding/mediation conference before the Pennsylvania Human Relations Commission;

(f)     Communications and dealings with the Pennsylvania Human Relations Commission, supplying information and documents to the Pennsylvania Human Relations Commission, receiving and analyzing defendants' answer, information, and documents submitted to the Pennsylvania Human Relations Commission, and, ultimately, reviewing and analyzing the entire Human Relations Commission file obtained pursuant to subpoena;

(g)     Drafting and filing of Mr. Argue's federal court lawsuit;

(h)     Creating witness, document, and damages lists/summaries;

(i)     Engaging in written discovery and substantial document production, and preparing and filing various discovery-related motions; negotiating, re-drafting, and finalizing a Stipulated Protective/Confidentiality Order;

(j)     Preparing for and attending two depositions of Mr. Argue and one of his wife;

(k)     Preparing for and conducting five depositions of Davis Acura's owner and employees;

(l)     Conducting legal Research, reviewing and summarizing depositions, and preparing the necessary response to Davis Acura's Motion for Summary Judgment;

(m)     Reviewing defendants' offer of judgment under Rule 68, researching issues related to same, and analyzing whether and how to respond;

(n)     Attending multiple status and/or pre-trial conferences, including settlement conferences, requiring, *inter alia*, preparation of settlement conference memos;

(o)     Researching and preparing responses to Davis Acura's' Pre-Trial Motions In Limine;

(p)     Preparing final trial submissions in accordance with the Court's Scheduling Order and general rules of procedure and the local Rules of Civil Procedure;

(q)     Researching and preparing plaintiff's Motion(s) in Limine;

(r)     Conducting legal research in preparation for trial and during trial with regard to expected issues at trial and for the purpose of preparing and arguing as to jury instructions, the verdict form, and evidentiary issues at trial;

(s)   Retaining and working with plaintiff's expert in preparing and submitting expert analysis and reports throughout the case, and with regard to his trial testimony, including preparation of a detailed employment and wage history of plaintiff prior and subsequent to his discharge;

(t)   Receipt, review, analysis, and study of the defense expert report and the governmental studies cited therein - for purposes of cross exam and/or rebuttal at trial and argument at trial;

(u)   Detailed review and preparation for trial, including numerous hours of preparation with plaintiff and his witnesses, and numerous hours preparing for cross-exam of defendants' expected witnesses;

(v)   Selecting a jury and trying the case to a jury - February 19-29 - and complying with the Court's research and document preparation requirements as to legal issues and jury instructions throughout the trial;

(w)   Preparation of Plaintiff's Petition for Attorney's Fees and Costs and all attachments thereto, and other Post-Trial Motions re: pre-judgment interest and the negative federal income tax consequence; and

(x)   Review, research, analysis, and preparation of plaintiff's post-trial motion to mold or amend the verdict/judgment so as to include a full award of lost back wages from date of discharge to date of verdict.

30.   In addition, my firm spent numerous hours on the following matters:

(a)   Researching and defending against defendants' Motion to Disqualify me and my firm, in assisting plaintiff, after disqualification, in his search for other counsel, in preventing dismissal of the case under Local Rule 41.1(a), in seeking reconsideration of the disqualification order, and in ultimately seeking and obtaining approval for reinstatement and my re-entry of appearance on behalf of plaintiff;

(b)   Researching, investigating, taking discovery related to, reviewing documents, and defending against defendants' after-discovered evidence defense; and

(c)   Researching, investigating, reviewing documents, and defending against defendants' failure to mitigate defenses.

31.     A significant amount of time was required to respond to and argue against defendants' vigorous and aggressive defenses, such as, for example, those set forth in paragraph 30 hereof.

32.     Under the circumstances, the hours expended on this case were reasonable and were reasonably necessary. Much of our firm's time was necessitated by the numerous factual and legal issues and complexities particular to this case, the reasonable needs of proper case and trial preparation, the need to assure that plaintiff would have proper representation, and the need for detailed review and preparation of the case, including the need to continually cross reference among the various witnesses' information provided and/or testimony in order to prepare effective testimony, cross-examination, and arguments at trial -- all to win the ever important credibility battle. Also, as can be seen from Exhibits "A" and "B," no more than nominal time, if any, was spent on the common law unjust enrichment claim, which essentially was abandoned shortly after filing the federal court complaint, and no extra time was spent on this case (beyond the time needed anyway for the case against the corporate defendant) simply because two individual defendants, David Davis and Joseph Daino, were initially named as party defendants.

33.     Therefore, it is not an overstatement to say that, particularly as to liability, given the aggressive defense, the time and effort expended in the prosecution of this case, with no compensation for more than seven years, has been most demanding and exacting. Indeed, the fact that the liability issue was very close and difficult to prevail upon is evidenced by, *inter alia*, the following:

      (a)    After my disqualification, despite substantial effort by plaintiff and my assistance, plaintiff was, for more than a year, unable to locate any attorney in Philadelphia or the surrounding counties to accept the risk of undertaking representation of him in this case;

      (b)    Defendants' offered judgment under Rule 68 for only $15,000 on January 8, 2004;

(c)    Defendants made only low offers to settle plaintiff's claim(s) and all claims for attorney's fees and costs, which offers were not made until late in the case -- at first $60,000 max (in early 2007), and, ultimately, right before trial in 2008, $75,000 max;

(d)    Defendant refused to consider or even discuss the possibility of settlement during the trial, despite the court's encouragement to do so and plaintiff's willingness to do so, instead taking the position that it was too late; and

(e)    The Jury deliberated on the liability question alone over two days (as determined by the questions asked by the jury up to late Friday afternoon, February 29, 2008); once the last liability question was resolved, the jury returned with all answers to the questions on the Verdict Form (and the verdict) within 35-45 minutes thereafter.

34.    My firm's entire fee was/is contingent and rested solely upon successful prosecution of this litigation and obtaining a favorable result as to liability on behalf of Mr. Argue. Thus, my firm assumed all the risks of this litigation with respect to an award of attorney's fees and reimbursement of costs. This risk was substantial given the difficult liability question, the various defenses raised, and the facts set forth in paragraph 33 hereof.

35.    In total, our firm spent 1,216.50 hours working on Mr. Argue's case from January 11, 2001 through February 29, 2008 (date of jury verdict) and incurred $14,537.85 in costs.

36.    Since then, our firm has spent an approximate additional 24.6 hours, and incurred an additional $2,250 (including Mr. Verzilli's final billing for his trial appearance) in costs, working on, preparing, and filing plaintiff's post-trial motion(s) for pre-judgment and post-judgment interest and recovery of the negative federal income tax consequence. This does not include the time that will likely be needed to reply to any answer(s) to said motion(s). See Exhibit "D," attached hereto.

37.    Also since February 29, 2008, our firm has spent an approximate additional 22 hours to prepare and file plaintiff's petition for attorneys' fees and costs and the supporting

attachments thereto.  Again, this does not include the time that will likely be needed to reply to any answer/objections to this petition.  See Exhibit "D," attached hereto.

38.     In addition, since February 29, 2008, our firm has spent an additional 19 hours to research, prepare, and file plaintiff's motion and supporting memorandum of law to mold or amend the verdict or judgment to include a full award of lost wages - from date of discharge to verdict.  This also does not include the time that will likely be needed to reply to any answer opposing this motion.  See Exhibit "E," attached hereto.

39.     This petition also does not include the time that will likely be needed to respond to or answer any post-trial filings or submissions of defendant.

40.     Inclusive of post-trial work to date, as per paras. 35-38 hereof, our firm has spent a total of 1,282.10 hours on this case through and including March 17, 2008.

41.     When the total time worked on this case through March 17, 2008 is multiplied by the hourly rates set forth in my firm's billing statements, attached hereto as Exhibits "A," "B," "D," and "E," the total fees sought through March 17, 2008 are $468,969.50, and the total amount sought for reimbursement of costs advanced by my firm is $16,787.85.

42.     The fees requested were reasonably and necessarily incurred in connection with the prosecution of Mr. Argue's claim(s) and in defending against the defenses raised, and were instrumental in his obtaining a verdict in his favor; the fees incurred since February 29, 2008 have been reasonably and necessarily incurred in order to obtain proper post-trial relief and an appropriate final judgment on Mr. Argue's behalf.

43.     The costs expended in this matter are also typical of those required in prosecuting similar employment discrimination claims. The costs, all of which are itemized in the billing statements (Exhibits "A," "B," "D," and "E"), include filing and service fees, document

Dated: _____3/17_____, 2008

_____
CHARLES J. WEISS

Dated: _____3/17_____, 2008

_____
ANN THORNBURG WEISS (as to paras. 10 (in part), 14, 16 (in part) and 29 (in part)

Dated: _____3/17_____, 2008

_____
CAROL A. CRISCI (as to paras. 10 (in part), 13, 16 (in part) and 30

Dated: _____3/17_____, 2008

_____
JOSHUA S. GANZ (as to paras. 12 (in part), 15, 16 (in part), and 29 (in part)

Dated: _____3/17_____, 2008

_____
JULIE A. STARITA (as to paras. 12, 18, 19 (in part), 29 (in part), 31, and 32 (in part)

234998-1

Exhibit "A" of Exhibit 1

# TIMONEY, KNOX, HASSON & WEAND, L.L.P.

ATTORNEYS-AT-LAW

P.O. BOX 7544

400 MARYLAND DRIVE

FORT WASHINGTON, PA 19034-7544

www.TKHW.com

THOMAS J. TIMONEY
JOHN P. KNOX
MARK E. WEAND, JR.
MICHAEL O'HARA PEALE, JR.£
CHARLES J. WEISS
RICHARD T. ABELL
JAMES M. JACQUETTE
ROBERT J. BENISCHECK
HERMAN J. WEINRICH*
CATHERINE M. HARPER
JOHN J. MCANENEY*†E
GEORGE M. RITER£
ANN THORNBURG WEISS
DAVID S. RENO
SCOTT H. WOLPERT*
MAURI L. LEVY
KARL D. COOPER
BONNIE R. WITTENBERG
ADAM N. BRAM*
KAREN SCHECTER DAYNO*£

OF COUNSEL
JOHN V. HASSON
JEREMIAH J. CARDAMONE
GEORGE Q. HARDWICK
JOHN F. GAFFNEY

DIRECT DIAL NO.
(215) 540-2654
E-Mail: cweiss@tkhw.com

PHONE:
(215) 646-6000

FAX:
(215) 646-0379

*MEMBER NJ BAR
£LLM TAXATION
†CPA

*Celebrating 80 Years
Of Service To The Community!*

---

**RE:**   **Robert E. Argue, III v. David Davis Enterprises, Inc., et al.**
**U.S. District Court – Philadelphia – 02-9521**
**Our client:  Robert E. Argue, III**

---

## Time Summary - 2001

| Date of Service | Description | Time |
|---|---|---|
| 01/11/01 | Telephone conference with client. | .2 |
| 01/12/01 | Telephone conference with client. | .1 |
| 01/16/01 | Conference and review with client; notes regarding same; analysis, advice; draft of correspondence to client; memo regarding status, issues, and follow-up needed. | .6 |
| 01/29/01 | Receipt and review of correspondence from client; note for follow-up. | .1 |
| 02/05/01 | Review of file and notes; telephone conference with client and notes regarding same; draft of correspondence to Davis Acura; correspondence to client with enclosures; memo regarding status, legal research needed, and follow-up needed. | .8 |
| 02/13/01 | Telephone conference with client. | .2 |
| 02/14/01 | Telephone call from defendant's representative; review of notes; telephone conference with client; note for follow-up. | .4 |
| 02/16/01 | Telephone conference with opposing counsel; notes regarding same; note for follow-up. | .1 |
| 02/23/01 | Telephone calls to client; note to follow-up. | .1 |

CIVIL AND COMMERCIAL LITIGATION ♦ CORPORATE AND BUSINESS REPRESENTATION ♦ FAMILY LAW
♦ FEDERAL, STATE AND LOCAL TAXATION ♦ MUNICIPAL LAW ♦ PERSONAL INJURY ♦ REAL ESTATE ♦
WILLS, ESTATES AND TRUSTS ♦ WORKERS' COMPENSATION

235202-1

Page 2

| | | |
|---|---|---|
| 02/27/01 | Complete review of file, file notes and documents, and recent case on burden of proof and persuasion in age discrimination cases; notes regarding the foregoing; preparation for and telephone conference and review of status, issues, and follow-up needed with client; telephone conference with client regarding witnesses and follow-up needed. | .9 |
| 02/28/01 | Telephone conference with client regarding witnesses and follow-up needed; note to file. | .2 |
| 06/25/01 | Telephone conference with client; telephone conference with Pa. Human Relations Commission (HRC) and EEOC | .3 |
| 06/26/01 | Review of file, notes, and documents; analysis and preparation of Pa. HRC/EEOC complaint; review of burden of proof issues; telephone conferences with Pa. HRC and EEOC. | 1.2 |
| 06/27/01 | Further services regarding preparation of Pa. HRC/EEOC complaint, along with related documents, for filing on or before 07/02/01 | 1.0 |
| 06/28/01 | Further review and preparation of Pa. HRC/EEOC complaint and related documents; receipt and review of further forms from HRC for later filing; conference and detailed update and review with client; modifications (several drafts) to complaint; further notes based on same; memos regarding status, issues, and follow-up needed; further re-drafting of complaint; draft of correspondence to client. | 2.2 |
| 06/30/01 | Telephone calls to client regarding clarifying certain facts; finalizing Pa. HRC/EEOC complaint for filing on 07/02/01; further draft of correspondence to client; draft of correspondence to Pa. HRC; arranging for filing on 07/02/01; note regarding clarifying work issues, investigation, and follow-up needed. | 1.1 |
| 07/02/01 | Finalization of complaint and filing same with Pa. HRC/EEOC; Correspondence with enclosures to client. | .5 |
| 07/09/01 | Telephone conferences with Pa. Human Relations Commission and EEOC; notes for follow-up and possible cross-exam of client on certain points. | .4 |
| 08/20/01 | Intra office conference and review regarding further correspondence needed to Pa. Human Relations Commission and EEOC. | .2 |
| 09/17/01 | Receipt and review of correspondence from Human Relations Commission with enclosures including, inter alia, guide for future proceedings, notice to complete forms, and, request for information; notes regarding same and memo for response; research and analysis of two cases concerning prima facie case, burden shifting, and causation in two age discrimination cases. | 1.9 |
| 09/24/01 | Receipt and review from opposing counsel of motion/request to dismiss administrative complaint; review of statutory provisions request; telephone call to opposing counsel and correspondence and telephone conference with Pa. Human Relations Commission and opposing counsel. | 1.2 |
| 09/25/01 | Receipt and review of notices from Pa. Human Relations Commission and EEOC; memo to file. | .2 |

Page 3

| | | |
|---|---|---|
| 09/26/01 | Research on computation of time regarding filing administrative complaint; preparation of correspondence with legal position to the Human Relations Commission regarding motion/request to dismiss administrative complaint. | 1.0 |
| 10/10/01 | Receipt and review of correspondence from opposing counsel for defendants. | .1 |
| 10/22/01 | Receipt and review of correspondence from opposing counsel to Human Relations Commission, with enclosures; notes regarding same. | .4 |
| 11/05/01 | Receipt and review of correspondence with enclosures from Pa. Human Relations Commission and EEOC; notes regarding same; telephone call to Human Relations Commission. | .2 |
| 11/06/01 | Telephone conferences with Human Relations Commission and client; scheduling fact finding/mediation conference | .4 |
| 11/08/01 | Receipt and review of correspondence from opposing counsel to Human Relations Commission; Receipt and review of correspondence from Human Relations Commission with document and data request; review of file for preparation of response; telephone conference and review with client; notes regarding same; analysis of issues; memo to file. | 1.8 |
| 11/16/01 | Receipt and review of correspondence from opposing counsel to Human Relations Commission; Receipt and review of defendant's answer to administrative complaint; analysis and notes regarding same; telephone conference and review with client regarding same; correspondence forwarding same to client; further services and preparation of response to Human Relations Commission as per November 8, 2001. | 2.6 |
| 11/19/01 | Completion of HRC forms, including discharge questionnaire and witness information forms; re-drafts of same and notes regarding same; conference and review with client regarding same; correspondence with enclosures to HRC; detailed review and preparation for fact finding/mediation conference at HRC on November 20, 2001. | 2.4 |
| 11/20/01 | Further preparation for, travel to and from, and attendance at fact finding/mediation conference at the Human Relations Commission - Philadelphia; discussions with opposing counsel; post-conference notes, memo, and review and discussions with client. | 4.6 |
| 11/21/01 | Telephone call to Human Relations Commission; further review and summary of events of 11/20/01; notes and memo regarding same. | .6 |
| 11/26/01 | Conference and review with client; telephone calls to and from the HRC. | .9 |
| 11/28/01 | Review of file status; telephone conference with client regarding discussion of various settlement options in short term; discussion regarding witnesses, documents, and follow-up needed. | <u>.5</u> |
| | | 29.3 |

Page 4

Total Hours:

Charles J. Weiss, Esquire (CJW) 18.2 at $425.00                    $7,735.00

Ann T. Weiss, Esquire (ATW) 11.1 at $275.00                    <u>$3,052.50</u>
                                                                                          $10,787.50


Costs:  0