IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT E. ARGUE, III, : | CIVIL ACTION |
| : | |
| Plaintiff, : | |
| v. : | NO. 02-CV-9521 |
| : | |
| DAVIS DAVIS ENTERPRISES, INC. t/a : | |
| DAVIS ACURA : | |
| Defendant. : | |
| : | |

**DEFENDANT DAVID DAVIS ENTERPRISES, INC. T/A DAVIS ACURA'S BRIEF IN OPPOSITION TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS**

Defendant David Davis Enterprises, Inc. t/a Davis Acura ("Davis Acura") submits its Brief in opposition to plaintiff's Petition for Attorneys' Fees and Costs. Under the circumstances of this particular case, plaintiff has only had limited success on the merits and any award for attorneys' fees under the lodestar method must be reduced due to plaintiff's limited success. Further, lead trial counsel's hourly billing rate of $425 per hour as well as the number of hours plaintiff's counsel spent on the litigation is excessive, unreasonable and unjustified and should be substantially reduced.

**I.      ARGUMENT**

   **A.      Standard In Determining Award Of Attorneys' Fees**

In an employment discrimination case, the district court has the discretion to award the prevailing party reasonable attorneys' fees. *Spencer v. Wal-mart Stores, Inc.*, 469 F.3d 311, 318 (3d Cir. 2006). In order to be awarded attorney fees, the prevailing party must succeed on any significant issue in litigation which achieves some benefit sought in bringing suit. *Id.* The determination regarding whether a plaintiff is the "'prevailing party' only bring the plaintiff across the statutory threshold… It remains for

the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983). A reasonable fee is one that is adequate to attract competent counsel, but which does not produce a windfall for attorneys. *Public Interest Research Group v. Windall*, 51 F.2d 1179, 1185 (3d Cir. 1995). The starting point for determining the reasonableness of a fee is to calculate the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. This calculation, called the lodestar, is presumed to be a reasonable fee. *Id; Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d. Cir. 1990).

There are, however, "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley,* 461 U.S. at 434. In fact, the United States Supreme Court has held that the degree of success obtained is the most "critical factor" in the calculation of a reasonable attorney fee. *Id*. at 436. Indeed, Third Circuit case law is also well-established that when a plaintiff has achieved only partial or limited success, a district court may adjust the attorney fees requested by the party downward. *Spencer*, 469 F.3d at 318, citing *Hensley v. Eckerhard*, 461 U.S. 424 (1983); *Rode*, 892 F.2d at 1183. The Court may reduce the requested attorney fees "even where the plaintiff's claims were interrelated, nonfrivolous and raised in good faith." *Id.*, citing *Hensley*, 461 U.S. at 436.

The Third Circuit has held that it is permissible for a district court to consider "the amount of damages awarded… compared with the amount of damages requested when determining a reasonable fee." *Spencer v. Wal-mart Stores, Inc.*, 2005 U.S. Dist. LEXIS 39038 (D. De. 2005), *aff'd by* 469 F.3d 311 (3d Cir. 2005); citing *Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996). In other words, "the amount of damages awarded, when compared with the amount of damages

requested may be one measure of how successful a plaintiff was in his or her action." *Id., citing General Instrument Corp. v. Nu-Tek Elecs. & Mfg.,* 197 F.3d 83, 91 (3d Cir. 1999). The *Spencer* court discussed this particular method used by courts in reducing attorney fees, as follows:

> The propriety of comparing the amount of damages awarded to the amount requested is supported by the Supreme Court's decision in *Farrar v. Hobby.,* 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). In that case, the Court held that 'when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.' 506 U.S. at 114. The logic of that statement supports the argument that more than 'prevailing' is important in determining a 'reasonable fee,' that **a qualitative assessment of the victory is also important**, and that such an assessment may have a quantitative component. *Id*. at *10.

In this case, the amount of damages awarded by the jury to plaintiff was $127,500, which award consisted of $107,000 in back pay, $18,000 in car related expenses and $2,500 in health insurance premiums. The amount actually awarded by the jury was far less than the amount requested by plaintiff both prior to and during the course of the trial. Plaintiff's settlement demand prior to trial was $300,000 and was never reduced during the course of the trial. Further, during the trial, plaintiff argued that he was entitled to compensation for back pay, front pay, compensatory damages (including emotional distress) and punitive damages. (See Verdict Form, Questions 4-6, attached hereto as Exhibit A.)  In fact, plaintiff presented evidence to the jury from his economic expert that he should be awarded $256,400 in back pay and $186,500 in front pay, for a total projected award of $442,500, which projected award does not even take into consideration the additional compensatory and punitive damages requested by plaintiff. Despite plaintiff's strenuous arguments, the jury only awarded plaintiff damages for back pay and chose not to award plaintiff anything for front pay,

3

compensatory damages or punitive damages. Accordingly, when comparing the damages requested by plaintiff prior to and during trial to the damages actually awarded by the jury, it is clear that plaintiff had only limited success in this case.

In a recent case, the Third Circuit affirmed a district court's decision to reduce a plaintiff's requested attorneys' fees by 75%. *Spencer*, 469 F.3d at 318-319. The *Spencer* court found that the plaintiff had achieved only limited success on her action where plaintiff prevailed only on her emotional distress claim and her actual award of $12,000 was far less than her projected total damages of $500,000. *Id.* Other courts in this district have also reduced the total amount of requested attorneys' fees in employment discrimination cases based on a plaintiff's limited success during trial. *Eshelman v. Agere Systems, Inc.*, 2005 U.S. Dist. LEXIS 29123 (E.D. Pa. 2005)(Court found that a reduction in attorneys' fees and costs by 50% was warranted in light of the employee's limited success at trial in an ADEA and ADA case); *Bereda v. Pickering Creek Industrial Park, Inc.*, 1990 U.S. Dist. LEXIS 7374 (E.D. Pa. 1990) (Court reduced plaintiff's attorney fees in an ADEA case by 66% due to limited success on both liability and damages at trial, where plaintiff was awarded $45,000 in damages at trial and fees requested were $321,737.14); *Washington*, 89 F.3d 1031, 1044 (3d Cir. 1996) (Court found the district court was well within its broad discretion when it discounted the fees by 50% for partial lack of success).

Further, the requested attorneys' fees must also be reduced because plaintiff was unsuccessful on several claims originally brought in plaintiff's Complaint, which claims were disposed of by the Court at the summary judgment phase of the litigation. In Counts II and III of plaintiff's Complaint, plaintiff had originally asserted "aiding and abetting" claims against individual defendants David Davis and Joseph Daino as well as

asserting claims under the Pennsylvania Wage Payment and Collection Law.  Defendant moved for summary judgment in this case and the Court ultimately granted summary judgment as to Count II and Count III of plaintiff's Complaint, dismissing plaintiff's claims against individual defendants David Davis and Joseph Daino and dismissing plaintiff's claim under the Pennsylvania Wage Payment and Collection Law.  (Doc. 80). Accordingly, plaintiff was ultimately unsuccessful on these claims and the requested attorneys' fees must be reduced accordingly.  See *Moore v. Susquehanna Area Regional Airport Authority*, 2005 U.S. Dist. LEXIS 45023 (M.D. Pa. 2005) (Court disallowed plaintiff 60% of the fees incurred in opposing defendant's Motion for Summary Judgment where plaintiff's ultra vires claim was dismissed at the summary judgment phase of the litigation).

The attorney fees requested by plaintiff should be reduced by at least 75% as plaintiff had only limited success at trial.  The amount of the attorneys' fee requested by plaintiff is astronomical, particularly when viewed in light of the benefits achieved at trial.  As discussed, the actual verdict was only $127,500 and the attorneys' fees requested by plaintiff were nearly $500,000, which was approximately four times the amount of the verdict!  Moreover, the actual amount of the jury verdict was over $400,000 less than the damages requested by plaintiff during the course of the trial. Importantly, plaintiff himself has virtually confirmed his limited success by filing a Motion to Alter/Amend the jury verdict in order to **increase the amount of back pay** awarded to plaintiff by the jury.  Plaintiff's limited success is clearly evidenced by several of his claims having been dismissed on summary judgment and also by a comparison of the amount of damages awarded by the jury to the amount of damages

requested by plaintiff both before and during trial.  Accordingly, plaintiff's requested attorneys' fees must be substantially reduced.

### B. The Hourly Rates Requested By Plaintiff's Counsel Are Excessive and Unreasonable

Counsel requests that he be compensated at hourly rates ranging from $185 per hour for legal assistant Julie Starita to the unprecedented and entirely unjustified figure of $425 per hour for trial counsel Charles Weiss.  However, plaintiff's counsel offers very little evidence regarding qualifications and backgrounds of each attorney who worked on the case, no substantive discussion of the facts and circumstances of this particular case that justify such exorbitant fees and only vague and generic objective evidence regarding rates charged by comparable attorneys in the relevant market.  This lack of proof, as well as the fact that rates sought are entirely excessive on their face, should lead the Court to reject plaintiff's fee petition.  *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996) (a district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely on the record).

As a threshold matter, attorneys' fees are to be based on market rates in the relevant community for the services rendered. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001), citing *Blum v. Stenson*, 465 U.S. at 895, 104 S. Ct. at 1547. "To determine 'the prevailing market rates in the relevant community,' a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.*  Here, plaintiff's efforts to establish that the rates are comparable to those within the market generally must fail.

6

Plaintiff's counsel relies on three vague and conclusory Declarations from attorneys in the market area to support his requested rates. None of the Declarations provide objective comparison of the rates sought in this case with those prevailing in the market. Further, all of the declarants merely state that plaintiff's requested rates are fair and reasonable based on the complex issues and the contested liabilities. Yet two of the declarants admit that they have reviewed none of the files or filing in the case or any billing entries and the third declarant admits only that he viewed "some of" the filing and billing entries. None of the declarants refer to any specific skills, knowledge or experience held by Mr. Weiss or his law firm that would warrant such a high hourly billing rate. Nor is there any evidence in the Declarations as to what hourly rates the declarants themselves actually charge and collect from their clients. Further, all three of the declarants take into consideration the "risk" factor of taking this case on a contingent basis, yet plaintiff's counsel does not explicitly state that this was a factor taken into account by either himself or his firm when establishing the hourly rate. Moreover, these vague and generic Declarations that the requested rates are reasonable are simply not enough to support such exorbitant hourly rates.

The relevant case law is clear that counsel cannot rely on a conclusory affidavit such as the ones submitted to meet the burden of proving the legitimacy of a fee petition. In *Becker v. ARCO Chemical Co.*, the Court summarily rejected a number of proposed affidavits in support of a fee petition, noting that:

> [c]onclusory statements attesting to each affiant's belief that $250.00 is a 'reasonable' rate is not sufficient to satisfy counsel's burden. The issue is not whether the affiants believe the hourly rates requested by counsel to be 'reasonable' based on a subjective determination of the value of the services. Rather, the inquiry is whether the hourly rate requested reflects that 'community market rate' attorneys of comparable skill, experience and reputation are

7

> paid by actual clients for providing services in cases of similar complexity… Conclusory statements, devoid of any factual underpinnings, no matter how distinguished the pedigree of the affiant, are insufficient to show that 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation. *Becker*, 15 F.Supp.2d 621, 629-630 (E.D. Pa. 2000).

Several other courts considering whether to award attorneys' fees have reached similar conclusions. *Erhart v. City of Atlantic City*, 2006 U.S. Dist. LEXIS 57709 (D.N.J. 2006) (Court held that mere conclusory affidavits from counsel are not enough to establish the reasonableness of a rate.); *Garner v. Meoli*, 19 F. Supp. 2d 378 (E.D. Pa. 1998)(Court held that while counsel's "affidavit was not a conclusory statement that the rates charged were reasonable, it only just escaped that label…[and] does not purport to establish the relevant market rates for attorneys specifically litigating civil rights suits"); *Oliver v. Bell Atlantic Corp*., 1994 U.S. Dist. LEXIS 8891 (E.D. Pa. 1994)(Court held that plaintiff had not carried his burden of establishing that his requested hourly rates were reasonable in light of the prevailing market rates).

The Third Circuit and courts in this district have repeatedly recognized that the most appropriate indicator of the prevailing market rates in Philadelphia is the schedule produced by the Community Legal Services, Inc. ("CLS"). *Maldonado*, 256 F.3d at 187 (Court approves of CLS's rates as reasonable in fixing the hour rates in the case); *Tomasso v. Boeing Co.,* 2007 U.S. Dist. LEXIS 70001 (E.D. Pa. 2007) (Courts in their discretion may use the CLS Fee Schedule in fixing a reasonable hourly rate for counsel); *Bjorklund v. Phila. Hous. Auth.*, 2003 U.S. Dist. LEXIS 22274 (E.D. Pa. 2003)(same). A review of CLS's most recent fee schedule, a copy of which is attached hereto as Exhibit "B," indicates that counsel's requested rates are unreasonable.

As noted above, counsel requests an hourly rate of $425 for Charles Weiss, Esquire, lead trial counsel in this case. This hourly rate suggested by CLS for an attorney with over 25 years of experience such as Mr. Weiss is a range from $325 to $410. Counsel's requested hourly rate exceeds even the highest range suggested by CLS yet he has provided no justification for allowing such an inflated rate in this case. In fact, it appears that no courts in this district have allowed such an increased hourly rate, even for lead trial counsel. *See Tomasso v. Boeing Co.,* 2007 U.S. Dist. LEXIS 70001 (E.D. Pa. 2007)(Court reduced lead trial counsel rate from the requested $450 to $350 in ADEA case)*; Omari v. Waste Gas Fabricating Co.*, 2005 U.S. Dist. LEXIS 6321 (E.D. Pa. 2005); (In an employment discrimination case, Court awarded a rate of $300 per hour for the partner and $275 per hour for the senior associate who sat first chair at trial); *Powell v. SEPTA*, 2007 U.S. Dist. LEXIS 44758 (E.D. Pa. 2007) (prevailing attorney was awarded the rate of $280 per hour in a race discrimination case, reduced by the Court from the requested $300 per hour); *Devore v. City of Philadelphia*, 2004 U.S. Dist. LEXIS 3635 (E.D. Pa. Feb. 20, 2004) (Court awarded $350 per hour to an employment law attorney with 29 years of experience who was 'well versed in the case and the applicable law'); *Rapp v. Cameron*, 2002 U.S. Dist. LEXIS 2801, at *6 (E.D. Pa. Feb. 20, 2002) (awarding $350 an hour for attorney with over thirty years experience), *aff'd*, 77 Fed. Appx. 88 (3d Cir. 2003); *Postles v. Longshore & Simmons, Inc.*, Civ. A. No. 01-2660 (E.D. Pa. Sep. 27, 2002), *aff'd* 90 Fed. Appx. 436(3d Cir. 2004)(employment law attorney was awarded fees of $300 per hour which was unquestioned by opposing counsel).

Further, it is entirely clear based upon Mr. Weiss's performance during the trial, that his services and experiences do not warrant a rate of $425 per hour. During the

9

course of the trial, Mr. Weiss repeated questions several times before being instructed by the Court to move on. Further, Mr. Weiss was not familiar with the proper use of deposition testimony for impeachment purposes and in fact tried to just have witnesses read their prior deposition testimony into the record. Perhaps most incredible, Mr. Weiss did not know that he needed to have his trial exhibits authenticated and particular exhibits identified by a particular witness prior to moving an exhibit into evidence. Rather, Mr. Weiss simply attempted to move all of the exhibits into evidence at the end of trial. Such improper trial practice does not seem to corroborate Mr. Weiss' claim that his significant "trial experience" warrants an hourly rate of $425 per hour.

The rate sought for Ms. Starita of $185 per hour is similarly excessive. Although counsel claims that Ms. Starita is a "trained and experienced lawyer," he admits that she has not been a practicing attorney for over fifteen years and she has worked as a paralegal and/or law clerk during that time. Counsel claims that Ms. Starita should be billed at the rate of a senior associate. However, as Ms. Starita is not licensed to practice law in Pennsylvania, her hourly rate should be reduced to that of a paralegal. The range suggested for paralegals under the CLS is $70 to $120 and Ms. Starita's rates should be reduced accordingly. Moreover, given the fact that counsel has failed to provide any information regarding Ms. Starita's qualifications or experience as an inactive attorney or as a paralegal, it would be entirely justified for the Court to deny Ms. Starita's rate entirely.

    **C.**    **<u>The Attorneys' Fees Sought By Plaintiff Are Excessive</u>**

Should the Court determine that an award of attorneys' fees to plaintiff is appropriate, it should significantly reduce the amount sought. In calculating the hours reasonably expended, a court should "review the time charged, decide whether the hours

10

set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary." *Maldonado*, 256 F.3d at 184; *Hensley v. Exkerhart,* 461 U.S. 424, 433-34 (1983); *Public Interest Research Group v. Windall,* 51 F.3d 1179, 1188 (3d Cir. 1995). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 173 (2d Cir. 1983) citing *New York Association for Retarded Children v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983).

Applying this standard, many of the hours for which plaintiff's counsel seeks compensation are clearly unjustified. As a general matter, many of counsels' descriptions of the work performed on this case are entirely too vague and generalized to meet the burden of demonstrating that the hours for which compensation is sought are justified. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 181 (3d Cir. 2001) (A fee petition must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed); *Washington*, 89 F.3d at 1037. For example, counsel repeatedly uses the "block billing" method and bills a block of time for a number of tasks, including phone calls, review of documents, meeting with co-counsel or legal research. Counsel fails to break down each activity and bill a certain amount of time for each activity, thus rendering it nearly impossible for the Court and opposing counsel to ascertain how much time was actually spent on each individual activity. Further, counsel repeatedly lists tasks such as review documents or conference with co-counsel or client without any further explanation as to what documents were reviewed or what the conference was regarding. Such entries are impermissible because they do not permit the Court to reasonably evaluate whether the time spent on any of the individual activities are

11

justified. For this reason, an overall percentage reduction of the fees, as discussed above, may be a more appropriate way for the Court to reduce plaintiff's requested fees.

Notwithstanding the above, plaintiff's counsel's "Fee Summary" shows an excessive, redundant and unnecessary expenditure of time, as follows:

- Mr. Weiss billed approximately 14.8 hours in December 2002 for review of documents and preparing the Complaint, for a total of $6,290, when a Complaint had previously been filed with the Pennsylvania Human Relations Commission and the underlying facts are not complicated.

- In August 2003, Mr. Weiss spent 32.5 hours on such ambiguous activities as reviewing the file, conferring with co-counsel and client and preparing discovery for a total of $13,812.50

- In September 2003, Ms. Ann Weiss spent 7.3 hours preparing an internal office memorandum of law, for a total of $2,007.50.

- On September 16, 2003, Mr. Weiss billed 2.2 hours for only two telephone calls, for a total of $935.

- On November 5, 2003, Mr. Weiss spent a total of 2.8 hours on a four telephone calls, review of a Court Order and the vague entry of "analysis of issues."

- In November 2003, Mr. Weiss spent 11.3 hours over six days for preparation of a Settlement Conference Memorandum, for a total of $4,802.50

- In January 2004, both Mr. Weiss and Ms. Weiss repetitively billed for review of discovery (2.5 hours by Ms. Weiss and 4.5 hours by Mr. Weiss), for a total of $2,600.

- In February 2004, Ms. Weiss billed 8.9 hours on a simple Motion to Compel Discovery, which was not filed until May 2004, for a total of $2,447.50.

- In a one month time period, from March 23, 2004 through April 21, 2004, Mr. Weiss billed 29.4 hours for the vague descriptions of meeting with his client and reviewing documents, for a total of $12,495.

- Mr. Weiss billed 29.9 hours for preparation for defense witnesses' depositions on six separate days for a total of $12,707.50.[1]

---

[1] As Mr. Weiss has once again lumped his deposition preparation into other billing as well, defendant is forced to assume that the full amount of hours billed were spent on deposition preparation, since counsel's activities and billing is not broken down in anyway.

- In May 2004, Ms. Weiss billed 7.4 hours for a two page Motion to Compel with a three page memorandum of law, for a total of $2,035.

- On June 16, 2004, Mr. Weiss billed 2.5 hours for two telephone calls, review of correspondence and review of a Motion, for a total of $1062.50.

- In June 2004, Mr. Weiss billed 14.9 hours on plaintiff's Response to defendant's Motion to Disqualify Counsel, for a total of $6,332.50.

- On November 8, 2004, Mr. Weiss billed 1.3 hours to review two Court Orders and on November 10, 2004, Ms. Weiss billed 3.5 hours to review the same Order and draft an internal memorandum, for a total of $1,524.50.

- In January 2007, Ms. Starita billed 4.7 hours and Mr. Weiss billed 5.8 hours on a Motion to Compel Discovery for a total of $5,043.10.

- In February 2007, Ms. Starita billed 4 hours and Mr. Weiss billed 5.1 hours for interoffice conferences and preparation of subpoena and document request to Acura, for a total of $2,907.50.

- In March and April 2007, Ms. Starita billed 17.4 hours and Mr. Weiss billed 47.8 hours to review and respond to defendant's Motion for Summary Judgment, for a total of $23,534.00.[2]

- Throughout 2007, Ms. Starita billed 11.9 hours and Mr. Weiss billed 12.2 hours on frivolous and repetitive Motions to Compel and Motions for Reconsideration, for a total of $7,386.50.

- In December 2006 and January 2008, Ms. Starita spent 26.6 hours and Mr. Weiss billed 27 hours on review of the file, inter-office conferences and preparation of the Pretrial Memorandum, for a total of $16,396.

- On January 24 and 25, 2008, Ms. Starita billed 4.4 hours and Mr. Weiss billed 5.5 hours for receipt and review of defendant's Pretrial Memorandum and interoffice conference regarding the same, for a total of $3,150.50.

- On January 28, 2008, Mr. Weiss billed 6.4 hours for preparation for and attendance at a Pretrial Conference with the Court, which conference lasted .5 hours, as well as some telephone calls, for a total of $2,720.

- From February 4, 2008 through February 18, 2008, Mr. Weiss billed 139.5 hours on pretrial preparation, documenting his work by such vague and generic entries as review of documents and file, further detailed review and

---

[2] As discussed above, the Court disposed of several of plaintiff's claims on defendant's Motion for Summary Judgment, leaving on plaintiff's claim under ADEA remaining.

13

> "further pretrial preparation, further preparation review and analysis, and extended telephone conference with client and witnesses," for a total of $59,287.50.

Further, plaintiff's counsel must not be awarded any fees for the time period between November 4, 2004 through October 25, 2006, during which time he was actually disqualified as counsel by the Court. To award fees during this period would be entirely inequitable as Timoney Knox and Mr. Weiss were not counsel of record during that time. On November 4, 2004, defendants' Motion to Disqualify was granted by the Court and the Court then stayed the case until January 1, 2005 to allow plaintiff to retain new counsel. (Doc. 29). Following the November 4, 2004 Order, there was no activity on the docket for over one year until the Court issued a Notice of Dismissal in November 2005. (Doc. 31). Plaintiff then filed a Petition to Stay or Deny the Dismissal in December 2005. (Doc. 32). Oral argument was not held on plaintiff's Petition until May 31, 2006. Following the oral argument, the Court directed plaintiff to file a Motion for Reconsideration of the Disqualification of plaintiff's counsel, which Motion the Court eventually granted on October 25, 2006. (Doc. 48). At that point, the parties again began to actively litigate the case. During the time period from November 4, 2004 through October 25, 2006, Mr. Weiss billed 55.6 hours at $425 per hour for a total of $23,630 and Ms. Crisci billed 28.3 hours for a total of $7,075.00. Accordingly, the $30,705.00 in attorneys' fees billed during this time period must stricken by the Court as Timoney Knox and Mr. Weiss were not counsel of record during that time.

Additionally, the time spent to prepare the Petition for Attorney Fees and Costs was excessive in and of itself. The billing invoice reflects that Mr. Weiss spent approximately 15.9 hours at $425 per hour preparing declarations and exhibits, reviewing case law and preparing the Petition, while Attorney Josh Gantz also spent 7.3 hours

14

researching and drafting the Petition at $250 an hour, and Ms. Starita spent another 1.3 hours reviewing and revising the declarations at $185 per hours. A total of 24.5 hours and $8,823.00 was spent on preparing the Petition for Attorney Fees and Costs.

Further, many of the costs for which plaintiff's counsel seeks reimbursement are unreasonable and impermissible. Plaintiff's counsel seeks $14,537.85 in costs up through the date of the trial. As with a request for attorneys' fees, the items listed on a party's bill of costs must be reasonable. Here, a number of costs sought by plaintiff's counsel are excessive and unjustified, including the following:

- $6,324.20 in costs for Westlaw Services online research, with no bills or receipts, no documentation regarding how long each research session was or what was being researched, let alone the contract with Westlaw describing the services and monthly cost as a general plan for all Westlaw research.

- $2,754.50 to court reporters for deposition transcripts, despite the fact that each party must pay for their own copy of the deposition transcripts.

- $82.48 in reimbursement for parking costs for Mr. Weiss and Ms. Starita

- $550 for the vague entry of "reproduction costs throughout case" without any specific references as to what documents were copied, the number of copies made or the billing rate per copy made.

- $3,550 for preparation of expert reports by Verzilli & Consultants, Inc.

Further, it must be noted that no receipts or documents were provided to substantiate any of the costs requested by counsel in his Petition. Consequently, plaintiff's demand for costs in this action denied as unreasonable and/or undocumented costs which plaintiff is simply not entitled to recover under the ADEA statute and case law.

## II. CONCLUSION

Based on the specific circumstances of this case, the fees requested by plaintiff's counsel should be greatly reduced due to plaintiff's limited success. Additionally, counsel's requested hourly fee rate must also be reduced as it is unreasonable and

15

unjustified based upon the prevailing market rate.  Further, the fees must be carefully examined, and all instances of redundancy, excessiveness and unnecessary expenditure of time should be reduced by the Court.  After the appropriate reductions, the attorneys' fees should then reflect the required *reasonableness* under the ADEA and Third Circuit case law.  Wherefore, defendant David Davis Enterprises, Inc. t/a Davis Acura respectfully requests that the Court deny plaintiff's Petition for Attorneys' Fees and Costs or, alternatively, substantially reduce the amount of fees and costs requested.

                                      Respectfully submitted,

                                      __s/Veronica W. Saltz_____\
                                      Veronica W. Saltz, Esquire\
                                      Alyssa N. Pianelli, Esquire\
                                      Attorney I.D. Nos.:  52931/200556\
                                      SALTZ POLISHER P.C.\
                                      993 Old Eagle School Road, Ste. 412\
                                      Wayne, PA  19087\
                                      (610) 964-3333

                                      Attorneys for Defendant\
                                      David Davis Enterprises, Inc. t/a\
                                      Davis Acura

Dated:  April 11, 2008

## **CERTIFICATE OF SERVICE**

I, Veronica W. Saltz, Esquire hereby certify that I caused a copy of Defendant David Davis Enterprises, Inc. t/a Davis Acura's Brief in Opposition to Plaintiff's Petition for Attorneys' Fees and Costs to be served this 11th day of April, 2008, by electronic filing, addressed as follows:

Charles J. Weiss, Esquire<br>
Timoney Knox, L.L.P.<br>
P.O. Box 7544<br>
400 Maryland Drive<br>
Fort Washington, PA  19034-7544

                                                     s/Veronica W. Saltz
                                                   Veronica W. Saltz, Esquire